Betty Jean **GAMBLE, Plaintiff-Appellee,**

v.

**HOSPITAL CORPORATION OF AMERICA, d/b/a Parkview Hospital, Wright Manufacturing Company, Inc., and Dow-Corning Wright, Defendants.**

**J.W. GAMBLE, Plaintiff-Appellee,**

v.

**HOSPITAL CORPORATION OF AMERICA, d/b/a Parkview Hospital, Wright Manufacturing Company, Inc., and Dow-Corning Wright, Defendants.**

Betty Jean **GAMBLE and J.W. Gamble, Plaintiffs-Appellees,**

v.

Dorothy M. **HABER and Arnold Haber, III, Co-Executors of the Estate of Arnold Haber, M.D., Deceased, Defendants-Appellants.**

Court of Appeals of Tennessee,
Middle Section at Nashville.

April 26, 1984.

Application for Permission to Appeal
Denied by Supreme Court
Aug. 20, 1984.

Joe M. Haynes, Mike Lawson, Haynes & Associates, Goodlettsville, for plaintiffs-appellees.

Mary Martin Schaffner, Douglas Fisher, Howell & Fisher, Nashville, for defendants-appellants.

OPINION

LEWIS, Judge.

The sole issue in this case is whether, in a medical malpractice action in which the plaintiff claims injury from negligence in an operation during which a surgical instrument broke and part of the instrument became lodged in plaintiff's spine, an amended complaint, alleging negligence in a subsequent surgery to remove that part of the broken instrument, relates back to the date of the original pleading.

Dr. Arnold Haber performed back surgery on plaintiff Betty Jean Gamble on June 17, 1981. During the operation the surgical instrument, a pituitary rongeur, used by Dr. Haber broke, and a fragment of the metal instrument lodged in plaintiff's spine. Despite extensive probing and repeated efforts, Dr. Haber was unable to retrieve the metal fragment during the June 17, 1981 operation. On October 14, 1981, Dr. Haber again operated and successfully removed the fragment of the surgical instrument.

Plaintiff Mrs. Gamble and plaintiff Mr. Gamble filed suit on April 1, 1982, and June 7, 1982, respectively, naming the hospital where the operation was performed and the manufacturer of the instrument as defendants. Plaintiffs specifically stated that Dr. Haber was not negligent and did not use undue force in the June 17 operation. On June 17, 1982, the plaintiffs filed suit against Dr. Haber alleging that the instrument broke during the June 17, 1981 operation because Dr. Haber had been negligent

and had used undue force. Plaintiffs claimed permanent injury to Mrs. Gamble's back, medical expenses, including the cost of further surgery to remove the metal fragment, lost wages, and loss of earning capacity; Mr. Gamble claimed loss of his wife's services. Plaintiffs subsequently moved to amend their complaint in November, 1982, and again in February of 1983. In the first and second amended complaints, as in the original complaint, the expense of the October 14, 1981 surgery was claimed as damages, but there was no allegation of any negligence in the performance of the October 14th surgery. Dr. Haber thereafter moved for summary judgment on the merits regarding all charges of negligence in the June operation. Then, in May of 1983, plaintiffs moved to amend their complaint a third time and alleged negligence by Dr. Haber in the performance of the October 14, 1981 operation. The Trial Court allowed plaintiffs' amendment but, at the same time, granted Dr. Haber's motion for summary judgment regarding the June, 1981 operation. The only remaining claim against Dr. Haber involved the October 14, 1981 surgery to remove the metal fragment. Dr. Haber moved to dismiss the allegations of negligence in the October 14, 1981 operation as barred by the one-year statute of limitations set out in Tenn.Code Ann. § 29-26-116. The Trial Court overruled Dr. Haber's motion to dismiss and found that under Tennessee Rule of Civil Procedure 15.-03 any amendment that involves "the same transaction, occurrence, or core of operative facts involved in the original claim" relates back to the date of the first claim. The Trial Court held that because the October 14th operation was the direct result of the broken instrument in the June 17th operation, it was sufficiently part of the same transaction or core of operative facts to relate back and Dr. Haber would not be prejudiced by the relation back.

The statute of limitations in medical malpractice cases is one year from the date the cause of action accrued or one year from the date of discovery of the injury. Tenn. Code Ann. § 29-26-116. Since plaintiff did not attempt to allege negligence in the October 1981 operation to remove the metal fragment until May, 1983, she is clearly beyond the statute unless the allegation "relates back" to the date of filing the original complaint of negligence against Dr. Haber on June 17, 1982.

Rule 15.03 [1] of the Tennessee Rules of Civil Procedure provides, in pertinent part: "Whenever the claim or defense asserted in the amended pleadings arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." Plaintiffs maintain that subsequent surgery to remove the instrument fragment was "part and parcel" of the conduct, transaction or occurrence in the original complaint, that Dr. Haber had adequate notice of the amended theory, and that Dr. Haber will not be prejudiced if the amendment is allowed. Defendants claim that the amended complaint represents "a new and wholly separate lawsuit," that the claim in the amended pleading did not arise out of the conduct, transaction or occurrence in the original pleading, and that the original pleading gave no notice of the claim in the amended pleading.

█ Rule 15 was part of the changes in the Rules of Civil Procedure that were intended "to insure that cases and controversies be determined upon their merits and not upon legal technicalities or procedural niceties." *Karash v. Pigott*, 530 S.W.2d 775, 777 (Tenn.1975). The allowance of amendments to pleadings has been greatly liberalized: the trial judge's discretion .has been replaced with the command that "leave shall be freely given when justice so requires;" new parties may be brought in even though the statute has run under certain situations. *Branch v. War-*

1. Tenn.R.Civ.P. 15.03 is identical to Fed.R.Civ.P. 15(c). We, therefore, consider decisions under Federal Rule 15(c) as relevant to our discussion.

*ren,* 527 S.W.2d 89, 91 (Tenn.1975); *see Karash,* 530 S.W.2d at 777.

Our Supreme Court has stated that Rule 15.03's "language is so clear and unequivocal that it is virtually self-construing." *Karash,* 530 S.W.2d at 777. The statutory standard is that "the claim . . . arose out of the conduct, transaction or occurrence . . . in the original pleading." Federal courts have developed three basic criteria or methods of analysis to determine whether a proposed amendment meets the statutory standard: some courts use "tests" that essentially ask if the amendment states a new cause of action; in other courts the critical element is whether the defendant had notice of the claim in the amendment from the original pleadings; other courts, perhaps because of a straight forward fact situation, have avoided secondary methods of analysis and have asked if the claim in the amendment arose out of the conduct, transaction or occurrence set forth in the original complaint. These methods of analysis are not rigid categories and some courts use two or more in deciding whether an amendment may relate back. Usually, if an amendment would relate back under one method of analysis it would also relate back under another.

The most frequently used tests to determine if an amendment states a new cause of action are as follows: Would a judgment on either the original pleading or the amendment bar action on the other; does the same evidence support both pleadings; is the measure of damages the same; does the same defense apply to both pleadings; is the same measure of proof required. *E.g., Popovitch v. Kasperlik,* 76 F.Supp. 233, 239 (W.D.Pa.1947). These tests are considered to be "mechanical" and most courts reject this "wooden" approach to Rule 15(c). Wright & Miller, *Federal Practice and Procedure: Civil* § 1497. The courts which reject the "tests" approach do so because the tests are "too narrow and restrictive, out of harmony with the Federal Rules, and ought to be replaced with an approach that takes an over-all view of the problem." *Green v. Walsh,* 21 F.R.D. 15, 20 (E.D.Wisc.1957).

These courts hold that the better view, consistent with the liberal rules of pleadings, is to ask "if the initial complaint put the defendant on notice that a certain range of matters was in controversy and the amended complaint falls within that range." *Jackson v. Airways Parking Co.,* 297 F.Supp. 1366, 1382 (N.D.Ga.1969). Some courts say that notice is the key, the critical element. *Id.* However, the leading commentators and several federal courts have stated that the best formulation for deciding when an amendment relates back is the statutory standard that the amendment must arise from the same conduct, transaction, or occurrence as set forth in the original pleading. *Green v. Walsh,* 21 F.R.D. at 19; Wright & Miller, *supra* at 5, § 1497.

 Notice to the defendant is not explicitly required in the statutory standard for relation back. Notice and lack of prejudice are, however, requirements to add a party to a suit after the statute of limitations has run, in addition to the requirement that the claim arise out of the same conduct, transaction, or occurrence in the original pleading. Tenn.R.Civ.P. 15.03. Courts that require notice, as well as an identity of transactions, are using notice to avoid the narrower rule of new cause of action. "[I]f the original pleading gives fair notice of the general fact situation out of which the claim arises, the defendant cannot be heard to complain of the amended complaint arising out of the same transaction." *Jackson v. Airways Parking Co.,* 297 F.Supp. 1366, 1382 (N.D.Ga.1969). The purpose of the statute of limitations is to avoid adjudication of stale claims and to give defendants notice to preserve their evidence. Since the relation back doctrine ameliorates the bar of the statute of limitations, if courts evaluate whether an amendment may relate back in terms of notice, in addition to the statutory requirement of same conduct, transaction, or occurrence, then the defendant still has all the protection that the statute of limitations was intended to give. *E.g., Tiller v. Atlantic*

*Coast Line R. Co.,* 323 U.S. 574, 65 S.Ct. 421, 89 L.Ed. 465 (1945).

Although, as a practical matter, the addition of a notice requirement to the statutory standard, usually would not change the result, in certain instances a notice requirement has resulted in denial of a motion to amend that would have been allowed under the articulated statutory standard. For example, in *Rosenberg v. Martin,* the Court denied the relation back of an amendment in a civil rights action under 42 U.S.C. § 1983. The original complaint alleged that the defendant, a police officer, violated the plaintiff's rights by lying to the public and the news media to influence the courts against him. His proposed amendment, filed outside the statute of limitations, alleged an assault by defendant while plaintiff was handcuffed that resulted in loss of hearing in one ear. The Court held that the first point to be determined was whether the assault claim "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading." Then, the Court stated:

> If the test were merely temporal, the assault claim would fall within Rule 15(c), since the alleged assault came within a short time after the exhibition before the television cameras. However, the test is not contemporaneity but rather adequacy of notice. As said by Judge Laramore in *Snoqualmie Tribe v. United States,* 372 F.2d 951, 960, 178 Ct.Cl. 570 (1967), "the inquiry in a determination of whether a claim should relate back will focus on the notice given by the general fact situation set forth in the original pleading." Under that test the case for relation back conspicuously fails. On the most liberal reading not a word in the complaint even suggested a claim of physical assault.

478 F.2d 520, 526 (2nd Cir.1973), *cert. denied* 414 U.S. 872, 94 S.Ct. 102, 38 L.Ed.2d 90 (1973).

In addition to the myriad decisions by the federal courts of Rule 15(c), we also have one decision by the Tennessee Supreme Court. In *Karash v. Pigott,* 530 S.W.2d 775 (Tenn.1975), the Court allowed an amendment to relate back under Rule 15.03 because the allegation in the proposed amendment "arose out of and was a part and parcel of the conduct, transaction and occurrence set forth in the original complaint." *Id.* at 777. In that case, plaintiff's original complaint alleged that the hospital dispensed or sold unpure blood for a blood transfusion after surgery resulting in serum hepatitis and that defendants were negligent by their failure to examine the blood, to warn of the risk involved, to obtain informed consent, and for unreasonably exposing plaintiff to serum hepatitis. Plaintiff then sought to amend the complaint to allege assault and battery in giving the plaintiff the blood transfusion. The Court held that the claim in the proposed amendment "clearly" arose out of the conduct, transaction, and occurrence set forth in the original complaint. *Id.*

In addition to examining the analysis methods by federal courts and our Supreme Court, we have also examined the cases cited to us by plaintiff and defendant. Plaintiffs have quoted many cases in which the words of the court, taken at face value, would indicate that the proposed amendment in this case should be allowed. However, an examination of the facts in those cases shows that they are so different from the fact situation before us that the courts' reasoning would not bring our fact situation under the statements quoted.

In *Michelsen v. Penney,* the Court stated:

> As a matter of pleading, the original complaint clearly gave defendant notice that he would be held for all acts of negligence. It charged him with negligence generally and with a resultant three-million-dollar loss "as hereinafter more particularly set forth and otherwise." The amended complaint elaborated upon this, alleging that the loss was occasioned by means known only to defendant. Certain acts of negligence were specified. But these did not anywhere near account for the total loss, and defendant was bound to realize that

he would be held for every possible act of mismanagement.

135 F.2d 409, 416–17 (2nd Cir.1943) (citations omitted). In that case, members of a depositor's committee sued the chairman of the Board of Directors of a bank for losses caused by his violation of his duty as a director. The original complaint alleged a loss of $3,000,000 from defendant's negligence "as hereinafter more particularly set forth and otherwise" and then mentioned some specific transactions. The amendment amplified "otherwise" to "in other manners and by other means peculiarly within the knowledge of the defendant." Eventually, other particular transactions were alleged. "The amended and supplementary complaint merely made specific what had already been alleged generally...." Id. at 417. Put in the context of this fact situation, the language of the Michelsen court about giving defendant notice that he would be held accountable for all acts of negligence does not help plaintiffs. A claim for the expenses of an operation is not a general allegation of negligence that can later be made more specific.

Similarly, although the words used by the Fifth Circuit in Barthel v. Stamm could indicate an extremely broad reading of what a "transaction" is, the facts of that case are so different from our case that plaintiffs are not helped. The Court stated:

> Limitation is suspended by the filing of a suit because the suit warns the defendant to collect and preserve his evidence in reference to it. When a suit is filed in a federal court under the Rules, the defendant knows that the whole transaction described in it will be fully sifted, by amendment, if need be, and that the form of the action or the relief prayed or the law relied on will not be confined to their first statement.

145 F.2d 487, 491 (5th Cir.1944). In the original complaint the allegation was that defendant had borrowed $10,000 from plaintiff's testator in one instance, $3,600 in another, and $1,200 in another. Checks cashed by the defendant in those amounts were attached as evidence. The defendant argued that the original petition was based on verbal or implied promises to repay the money and therefore writings that evidenced the loan transactions could not be used to amend the complaint. However, the Court found that "[t]he amendment, in no wise abandoning the identity or character of the loan transactions first alleged, ... the evidence leaves no doubt that they refer to the same transactions...." Id. The amendments in Barthel amplified and explained the transaction that was in the first complaint. We do not think the words of the court, considered in light of the facts, help plaintiff's case.

In Zagurski v. American Tobacco Co., 44 F.R.D. 440 (D.Conn.1967), plaintiff brought suit to recover damages from smoking cigarettes manufactured and sold by defendant. In the amended complaint plaintiff alleged additional theories of recovery. The Court clearly considered that the additional theories of recovery arose out of the same conduct, transaction, or occurrence set forth in the original complaint and that the "claim on which plaintiff relies is the same now as it was in the beginning." Id. at 443. In Zagurski, the plaintiff's amendment was based on the same conduct, i.e., the manufacture and sale of cigarettes, as that of the original complaint. Only the theories of recovery changed.

Plaintiff here asserts that the amendment clearly relates to the "general wrong suffered" and arises from the "general conduct causing such wrong," quoting that language from United States v. Templeton, 199 F.Supp. 179, 183 (E.D.Tenn.1961). In Templeton, the original complaint claimed forfeiture under the False Claims Act and damages under the Commodity Credit Corporation Act for twenty one loans falsely obtained by defendant for twenty two bales of cotton. The first count of the amendment alleged improper loans for 524 bales of cotton. The court allowed the amendment only to the extent that the twenty two bales were included in the 524, since there was no identity with regard to the wrong suffered or the con-

duct causing the wrong between the first count of the amendment and the original complaint. The second count of the amendment sued for double damages and forfeitures that were allowable under the False Claims Act. The original complaint specifically sued for $2,000 per transaction, the amount allowed under the False Claims Act. The Court held that the second count of the amendment only amplified the damages that were being claimed and that count arose from the same transaction as the original complaint.

None of the other cases quoted by plaintiff are persuasive because their facts are so inapposite to this case. There are a few cases with similar, but not identical, facts to our case. In these cases, no court has allowed an amendment to relate back.

In *Jirovec v. Maxwell*, 483 S.W.2d 852 (Tex.Civ.App.1972), the plaintiff sued her physician for negligence in an operation on March 28, 1969 in which he pinned her fractured femur. The pin was removed October 14, 1969 and Thompson Prosthesis was inserted by the same physician. That prothesis was later removed and another inserted by a different physician. In her first complaint plaintiff alleged only a specific act of negligence, the "improper operation" of March 28, 1969, claiming unnecessary pain, anguish, and surgery as the result of the March 28, 1969 operation. The amended complaint, filed after the two year statute of limitation had run, alleged specific acts of negligence in the insertion of the Thompson Prosthesis on October 14 and in the failure to take x-rays on March 28, but made no allegation of negligence on the March 28 operation.

The *Jirovec* court held that there were "two separate and distinct transactions or occurrences...." *Id.* at 854. The original petition alleged negligence in the operation of March 28, 1969; the amended petition was not based on any act prior to October 14, 1969, except for a general allegation of negligence in the care and treatment of plaintiff beginning on March 28, 1969. All specific allegations of negligence in the amendment were regarding the October 14,

1969 operation. The test in Texas is whether the amended petition is "wholly based upon and grows out of a new, distinct or different transaction and occurrence." Vernon's Ann.Civ.St. art. 5539b; *Leonard v. Texaco, Inc.*, 422 S.W.2d 160 (Tex.1967). We recognize that Texas' statutory standard, which replaced a cause of action test, has language different from that of our statute and the Federal Rules. Yet, it is close enough for the reasoning of the Texas court to be persuasive in a case with a fact situation so close to the instant case. The Court held that the alleged acts of negligence in the October operation were separate from the alleged acts of negligence in the March operation.

In *Tessier v. United States*, 269 F.2d 305 (1st Cir.1959), the plaintiff had an appendectomy performed in a Veterans' Administration Hospital on June 7, 1947. He began feeling pain in his side where the operation had been performed in 1948. After frequent hospitalizations with various tests and treatments, plaintiff re-entered the hospital on February 22, 1954; two metallic needle fragments and a subdiaphragmatic abcess were discovered on March 31, 1954. Plaintiff was discharged on May 20, 1954. The lower court found that the hospital was negligent in not finding the needle fragments by March 12, 1954. In his original complaint, filed November 30, 1955, plaintiff alleged negligence in the appendectomy and that as a result of that negligence, he was forced to undergo further treatment until the facts finally became known to him during his February 22 to May 20, 1954 hospital stay. The United States moved to dismiss under the statute of limitations. Plaintiff then moved to amend his complaint specifically to allege tortious conduct during the interim hospitalization and continuing negligence from June 7, 1947 to May 20, 1954. The lower court held that allegations of continuing negligence would not relate back under Rule 15(c). The First Circuit upheld the ruling on relation back because "[u]ntil the amendment, the complaint did not even suggest that recovery was claimed for negligence occurring during the period 1947 to

1954, and the amendment was filed more than two years after the end of that period." *Id.* at 308. The court would not allow relation back of an amendment alleging negligence in subsequent hospitalizations.

In *Holdridge v. Heyer-Schulte Corporation of Santa Barbara,* 440 F.Supp. 1088 (N.D.N.Y.1977), the original complaint alleged serious injuries from a defective mammary prosthesis inserted in plaintiff's right breast. In the proposed amendment, plaintiffs contended that defendant manufactured a series of defective prosthetic devices, including two which were implanted in the right breast and two implanted in the left breast. The Court found that the original complaint gave defendant notice of injuries from a defective prosthesis implanted in plaintiff's right breast in July of 1971, but no notice of additional prosthesis which contributed to her injuries. The original complaint mentioned that a new prosthesis was inserted but did not indicate that she had suffered from the replacement prosthesis. The allegation involving the additional devices were new operational facts and did not relate back. *Id.* at 1094. In our case, plaintiff mentioned the October operation to remove the metal fragment in her original complaint, but did not mention the allegations that she suffered from negligence in the October operation.

We have examined the cases cited by both the plaintiffs and defendant and find that in fact situations similar to this case, amendments have not been allowed to relate back. Considering the cases with similar fact situations, the cases with dissimilar fact situations, the reasoning of our Supreme Court in *Karash,* the purpose of Rule 15.03, the purpose of the statute of limitation, and the language of Rule 15.03, we find that the plaintiff's amendment should not relate back. Although we are of the opinion that Dr. Haber did not have notice that plaintiff was asserting any negligence concerning the October operation in her first complaint, we do not decide this case on the question of notice. While we do not reject the notice analysis used in the

federal court decisions and recommended by leading scholars, we are of the opinion that we do not get to the question of notice. In this case we look solely to the statutory language and the decision of our Supreme Court which addressed the question of relation back solely in terms of the statutory standard. We hold that although the *subsequent operation* might arise out of the "conduct, transaction or occurrence" in the original pleading, the *claim* of negligence in the second operation did not arise out of the "conduct, transaction or occurrence" set out in the original pleading.

The decision of the Trial Court is reversed with costs taxed to the plaintiffs and the cause remanded to the Trial Court for the collection of costs and any further necessary proceedings.

TODD, P.J. (M.S.), and CANTRELL, J., concur.