# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
May, 2000 Session

# WILLARD HAWK, JR., ET AL. v. CHATTANOOGA ORTHOPAEDIC GROUP, P.C., ET AL.

**Interlocutory Appeal from the Circuit Court for Hamilton County**
**No. 95-CV-0350     Samuel H. Payne, Judge**

**FILED JULY 24, 2000**

**No. E1999-00687-COA-R9-CV**

This is a medical malpractice case. We granted the plaintiffs' Tenn. R. App. P. 9 application for an interlocutory appeal in order to review an order of the trial court dismissing the amendments to the plaintiffs' original complaint and granting the defendants' motion *in limine* pertaining to evidence of a disabling hand condition of the defendant surgeon, Dr. David M. O'Neal. We reverse.

**Tenn. R. App. P. 9 Appeal by Permission; Judgment of the Circuit Court Reversed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and HERSCHEL P. FRANKS, J., joined.

Anita B. Hardeman and Harry F. Burnette, Chattanooga, Tennessee, for the appellants, Willard Hawk, Jr. and Janice Hawk.

John B. Bennett and Daniel M. Stefaniuk, Chattanooga, Tennessee, for the Appellees, Chattanooga Orthopaedic Group, P.C., and David M. O'Neal, M.D.

## OPINION

# I.

On February 16, 1994, the defendant, Dr. David M. O'Neal, an orthopaedic surgeon, operated on the plaintiff Willard Hawk, Jr., performing a total hip replacement on the right side.[1]  Being dissatisfied with the results of the surgery, the plaintiff filed a medical malpractice action against Dr. O'Neal on February 13, 1995.  Other defendants, including Chattanooga Orthopaedic Group, P.C., a professional corporation of which Dr. O'Neal was an employee, were also named in the suit.

In the complaint, the plaintiff stated that he injured his right hip in a motorcycle accident in September, 1972.  Despite this injury, he "was still able to work and fully enjoy life."  In February, 1992, the plaintiff "saw Dr. O'Neal."  The hip replacement surgery was performed two years later. The complaint charges that Dr. O'Neal "negligently performed the hip replacement."  Specifically, the plaintiff alleged that Dr. O'Neal (1) "negligently allowed or caused [the plaintiff's] sciatic nerve to become impinged in the new hip"; (2) "did not do proper tests to determine proper leg length"; (3) "negligently caused the new hip to be too long, with the result that after surgery [the plaintiff's] right leg was longer than his left leg"; and (4) "negligently placed the cup[2] in the wrong position." As a result of this alleged negligence, the plaintiff suffered "excruciating pain," his ability to walk was impaired, and he had decreased function of his right leg and foot.  The complaint goes on to allege that Dr. O'Neal and others from the professional corporation were guilty of post-operative negligence by "fail[ing] to properly relieve the pain or to rectify the negligence of Dr. O'Neal."  It also charges Dr. O'Neal and others in the group with additional acts of post-operative negligence.

In November, 1994, the plaintiff underwent surgery by an unnamed "specialist...to repair the damage done to the sciatic nerve and to release it from its entrapment in the artificial hip and to repair other problems caused by the negligent installation of the hip by Dr. O'Neal."  The plaintiff alleged that he is permanently disabled as a result of Dr. O'Neal's negligence.  The complaint seeks compensatory and punitive damages of $2,000,000.  Dr. O'Neal and the other defendants filed answers denying negligence and otherwise placing the allegations of the original complaint at issue.

Following discovery, and on July 1, 1999,[3] the plaintiff filed a motion to amend the complaint.  The motion contains the following factual predicate:

> Come Plaintiffs pursuant to Rule 15 of the Tennessee Rules of Civil
> Procedure and pray leave of this Court to amend their original
> Complaint filed February 13, 1995.  As grounds, Plaintiffs would

---

[1]Mr. Hawk's wife, Janice Hawk, is also a plaintiff.  She is pursuing a loss of consortium claim.  For ease of reference, we will refer to Mr. Hawk as "the plaintiff."

[2]"The cup" is not otherwise identified.

[3]The delay in moving this case through the court system is not totally explained; but there is a suggestion in the record that the defendants sought to prevent the discovery that ultimately led to the amendments to the complaint.

show that material facts regarding a disability (specifically Raynaud's Syndrome) suffered by Dr. O'Neal during Plaintiff's surgery were uncovered during discovery after the Court-ordered production of relevant documents.

Proof of Dr. O'Neal's disability and that his affliction was symptomatic during Plaintiff's operation provides additional bases for Plaintiff's allegations of Dr. O'Neal's negligence and medical malpractice, which allegations Plaintiff now seeks leave of this Court to specifically bring, already have [sic] alleged such negligence generally.

Over the objection of Dr. O'Neal and the other defendants, the trial court allowed the proposed amendments by order entered September 24, 1999. The order adds the following allegations to paragraph five of the complaint, the paragraph setting forth the plaintiff's negligence claims:

5e. That Dr. O'Neal's decision to operate on the hip of Plaintiff William Hawk was negligent and fell below the applicable standard of care due to Dr. O'Neal's knowledge of his debilitating hand disability at the time of the surgery and that such decision contributed to Dr. O'Neal's causing injury to the peroneal aspect of Plaintiff's sciatic nerve by improper suture;

f. That Dr. O'Neal and the other Defendants breached their duty to Plaintiffs by failing to warn Plaintiffs of Dr. O'Neal's own medical problems and resulting inability to perform the surgery properly;

g. That Dr. O'Neal's disability and its symptoms relative to Dr. O'Neal's inability to perform a surgery longer than one and one-half hours without pain, decreased sensation and loss of range of motion caused him to be negligent in his judgment and affected his state of mind during the performance of Plaintiff's surgery and throughout Plaintiff's post-operative care, all of which fell below the applicable standard of care and constitute negligence; and

h. That Dr. O'Neal was negligent, and his treatment of Plaintiff fell below the standard of care, not only during the operation but also in the course of Dr. O'Neal's post-operative decision making (or, more properly, the complete lack thereof) in light of Plaintiff's abnormal post-operative pain. Said negligence, both operatively and post-operatively, was due, in whole or in part, to Dr. O'Neal's own disability, about which he failed to warn Plaintiffs. This specifically contributed to Dr. O'Neal's negligence as generally alleged in

-3-

plaintiff's previous Complaint and was the direct and proximate cause of all injuries and damages suffered by Plaintiffs.

The defendants orally[4] moved to dismiss the allegations of the amendments. At the hearing on the motion, the defendants took the position that the allegations of the amendments were barred by the one-year statute of limitations[5] and, in any event, the three-year statute of repose.[6] They also pursued a previously-filed motion *in limine*[7] seeking to block the introduction into evidence of all testimony and other material pertaining to Dr. O'Neal's alleged "debilitating hand disability."

By separate order, also entered on September 24, 1999,[8] the trial court dismissed the amendments and granted the defendants' motion *in limine*. Among other things, the order provides as follows:

> Upon hearing argument of counsel and a review of all pertinent parts of the Court file, the Court is of the opinion that the amendment states a cause of action not heretofore pleaded. The statute of repose set forth in Tennessee Code Annotated § 29-26-116 bars the plaintiffs' amendment and, therefore, the amendment should be dismissed. The Court also finds that the motion *in limine* filed in behalf of David M. O'Neal, M.D. and Chattanooga Orthopaedic Group, P.C....should be sustained.

This appeal followed.

## II.

The issues before us are two:

> 1. Do the amendments to the complaint relate back to the date of filing of the original complaint?

---

[4] The Rules of Civil Procedure require the filing of a "motion *in writing*." *See* Tenn. R. Civ. P. 12.02. The lack of a writing is not raised as an issue on this appeal.

[5] T.C.A. § 29-26-116(a)(1) and (2) (1980).

[6] T.C.A. § 29-26-116(a)(3) (1980).

[7] The motion *in limine* was filed June 29, 1999.

[8] This was the same day that the order was entered allowing the plaintiff to amend the complaint.

2. Did the trial court abuse its discretion in granting the motion *in limine* as to the evidence pertaining to Dr. O'Neal's debilitating hand condition?

The critical question before us is whether the amendments that were added to the complaint by order entered September 24, 1999, relate back to February 13, 1995, the date on which the original complaint was filed. If they do, the amendments were timely filed; if, on the other hand, they do not, they are barred by the statute of repose since they clearly were filed more than three years after the latest-possible date of culpable conduct on the part of the defendants.

While the defendants did not file a written motion, it is clear that the bases of their dismissal motion are the affirmative defenses of the statute of limitations and the statute of repose. In this case, such a motion is treated as one filed pursuant to Tenn. R. Civ. P. 12.02(6) -- "failure to state a claim upon which relief can be granted." *See also* **Anthony v. Tidwell**, 560 S.W.2d 908, 909 (Tenn. 1977). ("A complaint is subject to dismissal under rule 12.02(6) for failure to state a claim if an affirmative defense clearly and unequivocally appears on the face of the complaint.") If the amendments do not relate back, the bar of the statute of repose "clearly and unequivocally appears on the face of the complaint." *Id*.

Under our well-established standard of review, we must "construe the complaint liberally in favor of the plaintiff, taking all allegations of fact therein as true." **Cook v. Spinnaker's of Rivergate, Inc**., 878 S.W.2d 934, 938 (Tenn. 1994). The motion if this case must be denied "unless it appears that the plaintiff can prove no set of facts in support of [his] claim that would entitle [him] to relief." *Id*.

III.

This case turns on the proper interpretation and application of Tenn. R. Civ. P. 15.03, which provides as follows:

> Whenever the claim or defense asserted in amended pleadings arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party or the naming of the party by or against whom a claim is asserted relates back if the foregoing provision is satisfied and if, within the period provided by law for commencing an action or within 120 days after commencement of the action, the party to be brought in by amendment (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

The question before us is simply this: Taking the facts as set forth in the amended complaint as true, and liberally construing those facts in favor of the plaintiff, can we say that the amendments "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading," *i.e.*, the original complaint? *Id*. In order to answer this question, we must review caselaw interpreting the "relation back" doctrine found in Rule 15.03. In this connection, the plaintiff urges us to find that the trial court's basis for holding that the amendments do not relate back – because "the amendment[s] state[] a cause of action not heretofore pleaded" -- is no longer the test in this jurisdiction.

IV.

A.

Rule 15.03 appears to have been first construed by the Supreme Court in ***Karash v. Pigott***, 530 S.W.2d 775 (Tenn. 1975). In that case, the plaintiffs' original complaint, sounding in strict liability and negligence, centered around a transfusion of contaminated blood. *Id*. at 776. The proposed amendment sought to add an allegation of assault and battery. *Id*. The Supreme Court, speaking through the late Justice Henry, found that the language of Rule 15.03 "is so clear and unequivocal that it is virtually self-construing," *id*. at 777, and opined that "[t]he time-honored 'new cause of action' objection to amendments has been substantially eroded by the...Rules of Civil Procedure." *Id*. The Supreme Court then concluded that "[c]learly, the assault and battery, as charged in the proposed amendment, if it occurred, arose out of and was a part and parcel of the conduct, transaction and occurrence set forth in the original complaint." *Id*.

In 1984, the Court of Appeals decided the case of ***Gamble v. Hospital Corp. of America***, 676 S.W.2d 340 (Tenn. Ct. App. 1984). In that case, we found that an amendment alleging negligence in a *second* operation did not relate back to an earlier complaint alleging negligence during an *earlier* operation. *Id*. at 347. We held "that although the *subsequent operation* might arise out of the 'conduct, transaction or occurrence' in the original pleading, the *claim* of negligence in the second operation did not arise out of the 'conduct, transaction or occurrence' set out in the original pleading." *Id*. (Emphasis in *Gamble*). In the course of our opinion, we discussed several federal cases holding that notice was a key element in determining whether an amendment relates back to the date of an earlier pleading. *Id*. at 343-47. With respect to the notice question, we stated that

> [w]hile we do not reject the notice analysis used in the federal court decisions and recommended by leading scholars, we are of the opinion that we do not get to the question of notice. In this case we look solely to the statutory language and the decision of our Supreme Court which addressed the question of relation back solely in terms of the statutory standard.

*Id*. at 347.

On August 20, 1984, the Supreme Court denied permission to appeal in the *Gamble* case and, on the same day, decided *Floyd v. Rentrop*, 675 S.W.2d 165 (Tenn. 1984), another case concerning the relation-back doctrine in the field of medical malpractice. It is true that the Court stated in that case that "[n]otice is the critical element involved in determining whether amendments to pleadings relate back." *Id*. at 168. However, the amendment in that case sought to add a new party defendant. *Id*. at 166. The language of Rule 15.03 provides that additional requirements, *including notice*, must be met when this is the case:

> An amendment changing the party or the naming of the party by or against whom a claim is asserted relates back if the [conduct, transaction, or occurrence test] is satisfied and if, within the period provided by law for commencing an action or within 120 days after commencement of the action, the party to be brought in by amendment (1) has received such *notice* of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

*Id*. (Emphasis added.) Therefore, we do not believe that *Floyd* can be read as requiring the element of notice for amendments not seeking to change the name of a party or otherwise seeking to name a new party.

In 1987, we decided *Energy Saving Products, Inc. v. Carney*, 737 S.W.2d 783 (Tenn. Ct. App. 1987). In that case, the original cause of action sought to recover on a debt owed on an open account. *Id*. at 784. Later, the plaintiff sought to amend its complaint to allege that the defendant's fraudulent misrepresentations induced the plaintiff to furnish goods on open account. *Id*. We held that "[c]learly, the allegations of fraudulent misrepresentation arose out of and were part of the conduct and transaction set forth in the original complaint." *Id*.

From these cases, we conclude that, where an amendment does not seek to change a party or name a new party, Tennessee courts are to determine whether the amendment relates back to the

date of an earlier pleading according to the "virtually self-construing" language of Rule 15.03.[9] *See Karash*, 530 S.W.2d at 777. Thus, if an amendment arises from the "conduct, transaction, or occurrence" in the original pleading, the amendment relates back to the date of the original pleading and thus avoids the effect of the statute of limitations, *see Energy Saving*, at 784, and, in this case, the statute of repose. If the amendment does not arise out of the same conduct, transaction, or occurrence as the original pleading, however, it does not relate back to the original pleading and thus will be time-barred if the limitations or repose period has expired. *Id*.

Upon examination of the relevant law, we agree with the plaintiff that the trial court erred in utilizing a cause of action test in determining whether the plaintiff's amendments relate back to the date of the original complaint. We find and hold that the proper inquiry in this case is simply whether the amendments arise out of the conduct, transaction, or occurrence in the original complaint.

The defendants rely on *Moore v. Baker*, 989 F.2d 1129 (11th Cir. 1993) to support their argument that the plaintiff's amendments do not relate back. In *Moore*, the plaintiff 's original complaint alleged that the defendant physician committed medical malpractice by failing to inform the plaintiff of a non-surgical alternative. *Id*. at 1131. After the statute of limitations had run, the plaintiff sought to amend her complaint to allege negligence in the performance of the surgery and in the rendering of post-operative care. *Id*. The Eleventh Circuit held that the proposed amendment did not relate back because the new claim did not arise out of the same conduct, transaction, or occurrence as the original claim. *Id*. at 1132. The court stated that

> the allegations asserted in [the plaintiff's] original complaint contain nothing to put [the defendant] on notice that the new claims of negligence might be asserted. Even when given a liberal construction, there is nothing in [the plaintiff's] original complaint which makes reference to any acts of alleged negligence by [the defendant] either during or after surgery. The original complaint focuses on [the defendant's] actions before [the plaintiff] decided to undergo surgery, but the amended complaint focuses on [the defendant's] actions during and after the surgery. The alleged acts of negligence occurred at different times and involved separate and

---

[9]We are mindful of the language in *Rainey Bros. Constr. Co. v. Memphis & Shelby County Bd. of Adjustment*, 821 S.W.2d 938, 942 (Tenn. Ct. App. 1991), stating that "the real question is whether the amendments raise a new cause of action." We note, however, that we also stated in that case that "Tennessee courts have generally followed the statutory standard that the amendment must arise from the same conduct, transaction or occurrence as set forth in the original pleadings." *Id*. Additionally, we note that, in *Rainey Bros.*, we cited *Floyd*, 675 S.W.2d at 168, for the proposition that "[n]otice to the defendant is not expressly required by the statutory standard for relation back but the Tennessee Supreme Court has determined that notice is the critical element involved in determining whether amendments to pleadings relate back." *Rainey Bros.*, 821 S.W.2d at 942. As we stated earlier, however, *Floyd* involved an amendment seeking to add a new party, and we do not believe it can be read to require anything in addition to the statutory standard where the amendment does not seek to change a party or name a new party.

distinct conduct. In order to recover on the negligence claim contained in her amended complaint, [the plaintiff] would have to prove completely different facts than would otherwise have been required to recover on the informed consent claim in the original complaint.

*Moore*, 989 F.2d at 1132 (footnote omitted). As previously stated, our appellate decisions analyze the issue of relation back on the "virtually self-construing" language of Rule 15.03, *see Karash*, 530 S.W.2d at 777, without imposing a notice requirement not found in the rule. While notice may be a useful analytical tool in attempting to determine whether an amendment arises out of the same conduct, transaction, or occurrence as the original pleading, notice is not an element unto itself.

We believe that the facts in the instant case are distinguishable from those in *Moore*. Informed consent is part and parcel of the surgical experience. Therefore, as we view the allegations of the case now before us, the amendments arose out of the same surgical experience alleged in the original complaint. In *Moore*, the negligence in the surgery is not a part of the battery alleged in the original complaint. As the Supreme Court has pointed out, "if a battery exists, then malpractice may not necessarily be reached." *Shadrick v. Coker*, 963 S.W.2d 726, 732 (Tenn. 1998). In any event, we view *Moore* as persuasive, not controlling, authority.

B.

The Supreme Court examined the lack of informed consent cause of action in a recent trilogy of cases. *See Bryant v. HCA Health Services of Tennessee, Inc.*, 15 S.W.3d 804 (Tenn. 2000); *Ashe v. Radiation Oncology Assoc.*, 9 S.W.3d 119 (Tenn. 1999); *Blanchard v. Kellum*, 975 S.W.2d 522 (Tenn. 1998). To the extent that they are relevant to the instant case, we will briefly review the principles set forth in this trilogy of cases.

The Medical Malpractice Act ("the Act"), T.C.A. § 29-26-115 to -120 (1980), "provides for a medical malpractice cause of action based on the inadequacy of a patient's consent to a medical procedure." *Bryant*, 15 S.W.3d at 808. The pertinent statute is T.C.A. § 29-26-118:

In a malpractice action, the plaintiff shall prove by evidence as required by § 29-26-115(b) that the defendant did not supply appropriate information to the patient in obtaining his informed consent (to the procedure out of which plaintiff's claim allegedly arose) in accordance with the recognized standard of acceptable professional practice in the profession and in the specialty, if any, that the defendant practices in the community in which he practices and in similar communities.

A "[l]ack of informed consent in a medical malpractice action under [T.C.A.] § 29-26-118 operates to negate a patient's authorization for a procedure *thereby giving rise to a cause of action for*

*battery.*"  **Blanchard**, 975 S.W.2d at 524.  (Emphasis added).  *See also* **Bryant**, 15 S.W.3d at 809.  T.C.A. § 29-26-118 is designed to "protect[] a patient from a physician who commits a battery when performing a procedure without legally sufficient consent."  15 S.W.3d at 809.

In an informed consent medical malpractice action under the Act, a plaintiff must prove "(1) what a reasonable medical practitioner in the same or similar community would have disclosed to the patient about the risk posed by the proposed procedure or treatment; and (2) that the defendant departed from the norm."  **Ashe**, 9 S.W.3d at 121.  In such a case, the issue of causation is based on an objective standard: "whether a reasonable person in the patient's position would have consented to the procedure or treatment in question if adequately informed of all significant perils."  **Id**. at 124.  Because the informed consent doctrine is predicated on a theory of battery, as opposed to negligence, a defendant who proceeds with a treatment or procedure without first obtaining the informed consent of the patient is liable "for the resulting injuries regardless of whether those injuries resulted from negligence."  **Shadrick**, 963 S.W.2d at 732.

In most informed consent medical malpractice actions, the plaintiff alleges that the defendant failed to advise the patient of a risk involved in the proper performance of the procedure.  *See, e.g.,* **Ashe**, 9 S.W.3d at 120 (patient was not advised that radiation treatment might result in permanent injury to her spinal cord).  In other cases, the allegation is that there was information regarding the procedure that the patient was entitled to have in order to make an informed decision as to whether to have the procedure performed.  *See* **Bryant**, 15 S.W.3d at 807, (failure of a physician to advise that a procedure was experimental and had not been approved by the FDA).

T.C.A. § 29-26-118 is broadly written.  It refers to a failure of a defendant to "supply appropriate information" to enable a patient to give informed consent.  In the instant case, the information in question does not pertain to the surgery *per se*.  In this regard, the instant case is different from the **Ashe** and **Bryant** cases.  Here, it is alleged that Dr. O'Neal, a surgeon, suffers from a hand condition that affects his use of those hands.  The plaintiff alleges that he was entitled to know this information under T.C.A. § 29-26-118.  Interpreting the amendments liberally in favor of the plaintiff -- as we are required to do in this "on the papers" analysis -- we find and hold that the plaintiff has alleged an informed consent malpractice action against Dr. O'Neal in the amendments.

C.

The concept of the "conduct, transaction, or occurrence" in the original complaint pertains to the underlying factual predicate as set forth in the original complaint upon which a plaintiff originally based his or her cause or causes of action.  In this case, those words mean, in general, the surgical procedure involving the plaintiff's total right hip replacement.  The original complaint refers to tests, otherwise unidentified, the surgery itself, and post-operative care.  Is this "conduct, transaction, or occurrence" broad enough to cover Dr. O'Neal's hand condition when he performed the surgery and conversations, or lack thereof, pertaining to that condition prior to and leading up to the surgery?  We believe the answer must be in the affirmative.  The Tennessee cases, *e.g.*,

***Karash***, with its "virtually self-construing" language and ***Energy Saving***, suggest that the "conduct, transaction, or occurrence" language should be broadly construed. ***Gamble*** is not an impediment to this approach because that case, unlike the instant case, involved two separate and distinct surgeries. ***Floyd*** is a case involving the addition of a new defendant, which, as previously indicated, is a factual scenario subject to specific requirements not applicable to the instant case. Finally, ***Rainey Bros.***, involves a specific factual pattern in the original complaint that is somewhat different from the facts upon which the amendment was based. Furthermore, the cause of action in the proposed amendment in ***Rainey Bros.*** is totally unrelated to the cause of action set forth in the original complaint.

We are of the opinion that the body of facts and circumstances that are relevant in the Rule 15.03 analysis in the instant case are those surrounding the February 16, 1994, surgery. We find no support in the language of the rule or in the pertinent caselaw for segregating by an imaginery line those pre-operative events relating to and leading up to the surgery from events occurring during and after the surgery. All events relate to the surgery. Parsing of the surgery is contrary to the letter and spirit of Rule 15.03. We conclude the amendments relate back to the date of filing of the original complaint. Therefore, since the original complaint was filed within one year of the date of surgery and since the amendments relate back to that filing date, the amendments are not barred by the statute of limitations and obviously not by the statute of repose. Accordingly, we find and hold that the trial court erred in dismissing the amendments based on a perceived violation of the statute of repose.

V.

The second issue in this case questions the correctness of the trial court's decision to grant the defendants' motion *in limine* regarding evidence pertaining to Dr. O'Neal's allegedly disabling hand condition. In granting the motion, the trial court did so after first ruling that this evidence pertains to the allegations of the amendments, which he had previously determined should be dismissed. We have now ruled that the dismissal was in error and this obviously changes, in a substantial and significant way, the factual predicate underlying the trial court's decision on the motion *in limine*. However, since the motion *in limine* was made and ruled upon, we believe it is appropriate that we examine this evidence.

During discovery, the plaintiff learned that Dr. O'Neal suffers from a condition known as scleroderma with Raynaud's phenomenon. Symptoms of this progressive condition include cold intolerance, pressure intolerance, and blanching of the fingers. Other symptoms include pain and decreased sensation and function. Dr. O'Neal's symptoms began gradually in 1989 or 1990. Prior to performing the plaintiff's surgery, Dr. O'Neal had scheduled a visit to another physician for the purpose of undergoing tests to determine the cause of his symptoms. *These tests were conducted the day after the plaintiff's surgery.* A medical record concerning the results of these tests states the following:

Approximately four years ago [Dr. O'Neal] began with swelling and gradual progression of loss of range of motion in his hands. Over the last eighteen months to two years he has noticed that when he wears surgical gloves for any significant length of time his fingers go completely white on both sides, perhaps slightly earlier on the right side, and has had increasing loss in range of motion. After doing a 1-1 1/2 hour procedure, his fingers are totally blanched and hypesthetic[10] regardless of the fact that he has changed his glove size.

Dr. O'Neal testified in his deposition that he was in surgery with Mr. Hawk for approximately two hours. He also conceded that, even after progressively increasing the size of his surgical gloves, his fingers generally still blanched after approximately 90 minutes of surgery. He further stated that he may have had a few measurable degrees of loss of motion on the day of the tests. He denied, however, that either of these symptoms impaired his performance of Mr. Hawk's surgery. He further stated that he did not experience any symptoms -- such as pain or decreased sensation -- that would have caused any functional impairment.

A physician's report regarding Dr. O'Neal's condition concludes that Dr. O'Neal "is a poor candidate to continue his orthopaedic surgical career." A letter from the examining physician to Dr. O'Neal states that

[i]t is my feeling that in view of your autoimmune disorder, scleroderma-scleroderma with Raynaud's phenomenon, that your continued operative surgery is likely to be detrimental to you and potentially hazardous as your disease progresses. I would therefore strongly urge you to consider discontinuing active operative surgery.

This letter is dated March 31, 1994, and is based upon an examination performed on March 2, 1994, less than a month after the plaintiff's surgery.

A review of Dr. O'Neal's medical records and his disability insurance applications reveals the following: Dr. O'Neal considers himself to have been partially disabled as of May 1, 1994. He initiated the process of reducing his patient load in May, 1994, because he had begun to develop sores and ulcerations on his fingers. Dr. O'Neal completely ceased practicing medicine in June, 1994, and he considers himself to have been completely disabled as of July 1, 1994, because he was unable to wear surgical gloves, tolerate the cold, or function in the operating room. Ultimately, Dr. O'Neal was declared disabled by the Social Security Administration and a number of insurance companies. During his deposition, Dr. O'Neal described his disability as being more of an inability to do surgery on a regular basis -- due to his tendency to develop ulcerations on his fingers after wearing surgical gloves -- rather than an inability to perform surgery on any particular day.

---

[10]"Hypesthetic" denotes a decreased sensitivity to touch and pain.

Tenn. R. Evid. 401 provides that

> "[r]elevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

Tenn. R. Evid. 403 provides that

> [a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

As we have previously indicated, the trial court's decision to grant Dr. O'Neal's motion *in limine* was made following its dismissal of the plaintiff's amendments. We have significantly modified the context of the trial court's decision, however, by ruling that the amendments should not have been dismissed because they relate back to the date of the original complaint.

At this juncture in the proceedings, we find and hold that the trial court erred in excluding evidence that goes to the very heart of the plaintiff's informed consent medical malpractice claim. This evidence, to the extent that it sheds light on Dr. O'Neal's hand condition leading up to the surgery, is not only relevant on the issue of informed consent, it is of the very essence of the claim. Accordingly, we reject the defendants' claim of non-relevancy and their argument pertaining to exclusion under Tenn. R. Evid. 403.

The plaintiff argues that Dr. O'Neal's hand condition is also relevant to the plaintiff's various claims of negligence in the original complaint and in the amendments. In our judgment, this is a determination that is better left to the trial court's judgment during the trial when the court can evaluate the state of the proof when the subject evidence is offered. However, this does not affect, in any way, our determination that such evidence is admissible on the informed consent claim, assuming that the plaintiff can prove, by expert testimony, that this evidence is of the type contemplated by T.C.A. § 29-26-118.

## VI.

The order of the trial court dismissing the amendments to the complaint and granting the appellees' motion *in limine* is reversed. Costs on appeal are taxed to the appellees. This case is remanded for further proceedings consistent with this opinion.

_____

CHARLES D. SUSANO, JR., JUDGE