## IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE

FOR PUBLICATION

**Filed:**  December 27, 1999

FILED

**December 27, 1999**

**Cecil Crowson, Jr.
Appellate Court Clerk**

PATRICIA P. ASHE,                          )
                                           )
            PLAINTIFF/APPELLANT,           )          Davidson Circuit No. 95C-58
                                           )
v.                                         )          Hon. Hamilton V. Gayden, Jr.,
                                           )                   Judge
RADIATION ONCOLOGY                         )
ASSOCIATES and STEVEN L.                   )          No. M1997-00036-SC-R11-CV
STROUP, M.D.,                              )
                                           )
            DEFENDANTS/APPELLEES.          )

FOR APPELLANT:                             FOR APPELLEE:

DAVID RANDOLPH SMITH                       THOMAS A. WISEMAN III
ROBERT BLAKE MENZEL                        Nashville
Nashville

# O P I N I O N

COURT OF APPEALS AFFIRMED
CASE REMANDED                                              HOLDER, J.

**OPINION**

We granted this appeal to address the appropriate standard to be employed when assessing the issue of causation in a medical malpractice informed consent case. We find that the objective standard as set forth in this opinion best balances a patient's right to self-determination with the need for a realistic framework for rational resolution of the issue of causation. We hold that the standard to be applied in informed consent cases is whether a reasonable person in the patient's position would have consented to the procedure or treatment in question if adequately informed of all significant perils. The decision of the Court of Appeals is affirmed, and the case is remanded to the trial court for a new trial.

**BACKGROUND**

The plaintiff, Patricia P. Ashe, was diagnosed with breast cancer in 1988. She ultimately underwent a double mastectomy and chemotherapy as treatment for her breast cancer. In 1993, she began experiencing problems with a cough and a fever. She returned to her oncologist, Dr. Michael Kuzu, where she presented symptoms of fever, cough, pain in the abdomen, weight loss, decreased appetite, and irritability. A chest x-ray and a CT scan revealed the presence of a mass in the medial left apex of her left lung.

The record indicates that the lung tumor could possibly have been metastatic cancer from the breast. Ms. Ashe underwent surgery, and the upper portion of her left lung was removed. She underwent chemotherapy and was referred to the defendant, Dr. Steven L. Stroup, for consideration of radiation therapy. Dr. Stroup testified that chemotherapy alone would be indicated if the

lung tumor were metastasized breast cancer. He, however, opined that radiation therapy would be indicated if the lung cancer were primary as opposed to secondary cancer.

Dr. Stroup prescribed radiation treatment for Ms. Ashe. She received a daily dose of 200 centigray for twenty-five days. He described the dose as a "midplane dose." Ms. Ashe sustained "radiation myelitis" caused by a permanent radiation injury to her spinal cord. She is now a paraplegic.

Dr. Stroup did not inform Ms. Ashe that the radiation treatment might result in a permanent injury to her spinal cord. According to Dr. Stroup, the risk that she would sustain a spinal cord injury was less than one percent. Mrs. Ashe proffered the testimony of her expert, Dr. Carlos Perez. Dr. Perez opined that the risk of spinal cord injury was one to two percent. Dr. Perez testified that the applicable standard of care required physicians to warn patients about the risk of radiation injury to the spinal cord.

Ms. Ashe filed the present action alleging claims for medical malpractice and lack of informed consent. At trial, she testified that she would not have consented to the radiation therapy had she been informed of the risk of paralysis. Defense counsel on cross-examination pointed out that the plaintiff did equivocate in her deposition on the issue of consent. Her deposition testimony indicated that she did not know what she would have done had she been warned about the risk of spinal cord injury. She then testified on redirect examination as follows:

> True, but the risk of being paralyzed and put in a wheelchair for the rest of your life was not one of the items, if there was any discussed, because had he said that within a six-month period–which they said that would be the time frame for it to

3

happen–had he said, 'Patty, if you do this there is a risk that you will be in a wheelchair six months from now,' I would have told him, 'I will take my chances.' I would not have it done.

The trial court found that the plaintiff's trial testimony conflicted with her deposition testimony regarding whether she would have consented to the procedure had she been warned of the risk of spinal cord injury. The trial court, therefore, struck the trial testimony and granted the defendant a directed verdict on the informed consent claim. The plaintiff's malpractice claim went to the jury. The jury was unable to reach a verdict, and a mistrial was declared.

The plaintiff appealed to the Court of Appeals. The Court of Appeals held that as part of the plaintiff's informed consent claim she was required to prove that a reasonable person knowing of the risk for spinal cord injury would have decided not to have had the procedure performed. The Court held that the discrepancy between the trial testimony and deposition testimony went to the issue of credibility and that the trial testimony should not have been stricken. The Court of Appeals reversed the trial court's grant of a directed verdict on the informed consent claim and remanded the case for a new trial.

**ANALYSIS**

The burden of proof on the standard of care element in medical malpractice informed consent cases is controlled by Tenn. Code Ann. § 29-26-118. Pursuant to § 29-26-118, a plaintiff must prove by expert testimony that

> the defendant did not supply appropriate information to the patient in obtaining his informed consent to the procedure out of which plaintiff's claim allegedly arose in accordance with the recognized standard of acceptable professional practice in the profession and

4

in the specialty, if any, that the defendant practices in the community in which he practices or in similar communities.

Id. In addition, Tenn. Code Ann. § 29-26-115 requires that the plaintiff prove the recognized standard of acceptable professional practice, that the defendant acted with less than ordinary and reasonable care in accordance with that standard, and that the plaintiff sustained injuries as a result of the defendant's negligent act or omission. Accordingly, the plaintiff in an informed consent medical malpractice case has the burden of proving: (1) what a reasonable medical practitioner in the same or similar community would have disclosed to the patient about the risk posed by the proposed procedure or treatment; and (2) that the defendant departed from the norm. German v. Nichopoulos, 577 S.W.2d 197, 204 (Tenn. Ct. App.1978).

This Court recently enunciated a distinction between a lack of informed consent case and a pure medical battery case. In Blanchard v. Kellum, 975 S.W.2d 522 (Tenn. 1998), this Court defined a medical battery as a case in which a doctor performs an unauthorized procedure. Id. at 524. A medical battery may typically occur when: (1) a professional performs a procedure that the patient was unaware the doctor was going to perform; or (2) the procedure was performed on a part of the body other than that part explained to the patient (i.e., amputation of the wrong leg). Id. A lack of informed consent claim typically occurs when the patient was aware that the procedure was going to be performed but the patient was unaware of the risk associated with the procedure. Id.

The case now before us is not a medical battery case. Ms. Ashe had authorized the radiation treatment. Ms. Ashe, however, contends that she was

5

not apprised of certain risks inherent in the treatment. Her claim, therefore, is premised on the lack of informed consent.

The issue with which we are now confronted is whether an objective, subjective, or a hybrid subjective/objective test shall be employed when assessing causation in medical malpractice informed consent cases. The issue is one of first impression in Tennessee. The majority of jurisdictions having addressed this issue follow an objective standard. A minority of jurisdictions having addressed the issue follow the subjective approach. One jurisdiction, Hawaii, employed a "modified objective standard" for informed consent cases for approximately ten years. Hawaii has now abandoned the modified approach in favor of the objective standard. We shall now examine the various approaches and the rationales behind these approaches.

### Subjective Standard

The plaintiff urges this Court to follow the minority rule or adopt a subjective standard when evaluating causation in an informed consent case. Causation under the subjective standard is established solely by patient testimony. Patients must testify and prove that they would not have consented to the procedures had they been advised of the particular risk in question. See e.g., Scott v. Bradford, 606 P.2d 554 (Okla. 1979); Wilkinson v. Vessey, 295 A.2d 676 (R.I. 1972). Accordingly, resolution of causation under a subjective standard is premised elusively on the credibility of a patient's testimony.

The subjective standard engages in an abstract analysis. The abstract analysis not only poses a purely hypothetical question but seeks to answer the hypothetical question. One commentator has framed this hypothetical question

6

as follows: "Viewed from the point at which [the patient] had to decide, would the patient have decided differently had he known something he did not know?" Canterbury v. Spence, 464 F.2d 772, 790 (D.C. Cir. 1972) quoting Waltz & Scheuneman, Informed Consent to Therapy, 64 Nw.U.L.Rev. 628, 647 (1970).

Proponents of the subjective test argue that a patient should have the right to make medical determinations regardless of whether the determination is rational or reasonable. Gouse v. Cassel, 615 A.2d 331, 335 (Pa. 1992). Opponents, however, focus on the unfairness of allowing the issue of causation to turn on the credibility of the hindsight of a person seeking recovery after experiencing a most undesirable result. Sard v. Hardy, 379 A.2d 1014, 1025 (Md. 1977). "Patients cannot divorce their re-created decision process from hindsight." F. Rozovsky, Consent to Treatment, § 1.13.4, 62-63 (1984). Accordingly, the subjective test potentially places the physician in jeopardy of the patient's hindsight and bitterness. Sard, 379 A.2d at 1025. Moreover, the adoption of a subjective standard could preclude recovery in an informed consent case in which the patient died as a result of an unforewarned collateral consequence. Id.

**Objective Standard**

The majority[1] approach or the so-called objective standard emanates from the seminal decision in Canterbury v. Spence, 464 F.2d 772 (D.C. Cir. 1972). In Canterbury, the court held that causation in informed consent cases is better

[1]Jurisdictions applying the objective standard include: Fain v. Smith, 479 So.2d 1150 (Ala. 1985); Aronson v. Harriman, 901 S.W.2d 832 (Ark. 1995); Hamilton v. Hardy, 549 P.2d 1099 (Colo. App. 1976); Hammer v. Mount Sinai Hosp., 596 A.2d 1318 (Conn. App. 1991); Bernard v. Char, 903 P.2d 667 (Haw. 1995); Sherwood v. Carter, 805 P.2d 452 (Idaho 1990); Funke v. Fieldman, 512 P.2d 539 (Kan. 1973); Sard v. Hardy, 379 A.2d 1014 (Md. 1977); Woolley v. Henderson, 418 A.2d 1123 (Me. 1980); Phillips v. Hull, 516 So.2d 488 (Miss. 1987); Backlund v. University of Washington, 975 P.2d 950 (Wash. 1999); Scaria v. St. Paul Fire & Marine Ins. Co., 227 N.W.2d 647 (Wis. 1975); Dixon v. Peters, 306 S.E.2d 477 (N.C. Ct. App. 1983).

resolved on an objective basis "in terms of what a prudent person in the patient's position would have decided if suitably informed of all perils bearing significance." Id. at 791. The objective view recognizes that neither the plaintiff nor the fact-finder can provide a definitive answer as to what the patient would have done had the patient known of the particular risk prior to consenting to the procedure or treatment. Id. at 790. Accordingly, the patient's testimony is relevant under an objective approach, but the testimony is not controlling. Id. at 791.

**Modified Objective Standard**

The modified objective standard was first recognized in Leyson v. Steuermann, 705 P.2d 37 (Haw. Ct. App. 1985). In Leyson, the Hawaii Court of Appeals attempted to balance patient's right to self-determination with the concerns espoused in Canterbury of subjecting a physician to a patient's bitterness or hindsight following an undesirable result. The resulting test determined causation "from the viewpoint of the actual patient acting rationally and reasonably." Id. at 47, n. 10.

Approximately ten years after the inception of the modified approach, the approach was declared to be onerous in application. In Bernard v. Char, 903 P.2d 667 (Haw. 1995), the Hawaii Supreme Court elaborated that:

> In its effort to achieve the desired result of combining the objective and subjective standards, the modified objective standard injects at least one extra level of complexity into the causation analysis. Under the objective standard, the factfinder must suspend his or her own viewpoint and step into the viewpoint of a reasonable person to objectively assess the plaintiff-patient's decision to undergo treatment. Under the subjective standard, the factfinder must simply assess the credibility of the plaintiff-patient when he or she invariably asserts that he or she would have declined treatment with proper disclosure. Under the "modified objective standard,"

8

> however, the factfinder must first suspend his or her viewpoint, then place himself or herself in the mind of the actual patient, and, then, while maintaining the viewpoint of the actual patient, try to determine what the actual patient would have decided about the proposed medical treatment or procedure, if the actual patient were acting rationally and reasonably.

Id. at 673. Accordingly, the modified approach was abandoned in favor of the objective standard.

> [D]espite being well-intentioned, [it] exacts too much of a cost in the form of added complexity in seeking to solve problems associated with the preexisting objective and subjective standards while at the same time remaining faithful to the laudable purposes behind such standards.

Id. The Court held: (1) that the objective standard provided "a better, simpler, and more equitable analytical process;" and (2) that the objective standard ultimately addressed the concerns which prompted the creation of the modified test.

**CONCLUSION**

We agree with the majority of jurisdictions having addressed this issue and hold that the objective approach is the better approach. The objective approach circumvents the need to place the fact-finder in a position of deciding whether a speculative and perhaps emotional answer to a purely hypothetical question shall dictate the outcome of the litigation. The objective standard is consistent with the prevailing standard in negligence cases which measures the conduct of the person in question with that of a reasonable person in like circumstances. Restatement (Second) of Torts § 283, p. 12 (1965); see also 1 S. Pegalis & H. Wachsman, American Law of Medical Malpractice, § 2.15, 103-104 (1980) (criticizing subjective test as being out of step with general

negligence concepts). The objective test provides a realistic framework for rational resolution of the issue of causation. We, therefore, believe that causation may best be assessed in informed consent cases by the finder of fact determining how nondisclosure would affect a reasonable person in the plaintiff's position.

We also are of the opinion that the objective test appropriately respects a patient's right to self-determination. The finder of fact may consider and give weight to the patient's testimony as to whether the patient would have consented to the procedure upon full disclosure of the risks. When applying the objective standard, the finder of fact may also take into account the characteristics of the plaintiff including the plaintiff's idiosyncrasies, fears, age, medical condition, and religious beliefs. Bernard v. Char, 903 P.2d 667, 674 (Haw. 1995); Fain v. Smith, 479 S.2d 1150, 1155 (Ala. 1985); Backlund v. University of Washington, 975 P.2d 950 (Wash. 1999). Accordingly, the objective standard affords the ease of applying a uniform standard and yet maintains the flexibility of allowing the finder of fact to make appropriate adjustments to accommodate the individual characteristics and idiosyncracies of an individual patient. We, therefore, hold that the standard to be applied in informed consent cases is whether a reasonable person in the patient's position would have consented to the procedure or treatment in question if adequately informed of all significant perils.

In applying the objective standard to the facts of this case, we agree with the Court of Appeals that the jury should not have been precluded from deciding the issue of informed consent. Under the objective analysis, the plaintiff's testimony is only a factor when determining the issue of informed consent. The dispositive issue is not whether Ms. Ashe would herself have chosen a different

course of treatment. The issue is whether a reasonable patient in Ms. Ashe's position would have chosen a different course of treatment. The jury, therefore, should have been allowed to decide whether a reasonable person in Ms. Ashe's position would have consented to the radiation therapy had the risk of paralysis been disclosed.

The judgment of the Court of Appeals reversing the trial court is affirmed. The case is remanded for a new trial consistent with this opinion. Costs of the appeal to the Court of Appeals shall be as previously taxed; costs of the appeal to this Court shall be taxed against the plaintiff for which execution may issue if necessary.

_____
JANICE M. HOLDER, JUSTICE

**Concurring:**

Anderson, C.J.
Drowota, Birch, and Barker, J.J.