IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
December 6, 2000 Session

## SANDRA MITCHELL v. MARC J. KAYEM, M.D., ET AL.

**Appeal from the Circuit Court for Maury County**
**No. 8097     Robert L. Holloway, Jr., Judge**

---

### No. M2000-01629-COA-R9-CV - Filed March 7, 2001

---

Patient with a history of papillary carcinoma underwent a fine needle aspiration which confirmed a diagnosis of cancer in her neck region. Patient underwent surgery to remove the cancerous tissue which resulted in hypoparathyroidism and injury to her recurrent laryngeal nerve, risks commonly associated with the procedure. Patient brought informed consent action against doctor, claiming that, had the inherent risks of the procedure been disclosed to her, she would have sought a second opinion and had the procedure performed at a different facility by a different surgeon. The doctor moved for summary judgment, which the trial court denied. Finding there are no material, disputed facts remaining, we reverse and remand.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court Reversed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS and HOLLY K. LILLARD, J.J., joined.

Thomas W. Lawrence, JR. and R. Blake Menzel, Nashville, Tennessee, for the appellant, Marc J. Kayem, M.D.

Tracy W. Moore, Columbia, Tennessee, for the appellee, Sandra Mitchell.

### OPINION

Sandra Mitchell (Ms. Mitchell), a licensed L.P.N. with a history of papillary carcinoma,[1] sought treatment from Dr. Marc Kayem (Dr. Kayem), an ear, nose and throat specialist, for a marble-sized nodule on the right side of her esophagus which had been present for approximately six months. Dr. Kayem ordered a biopsy of the nodule in the form of a fine needle aspiration, the results

---

[1] Ms. Mitchell was diagnosed with papillary carcinoma in 1986. She has undergone four surgeries to remove tissue in her neck region. As a result of these previous surgeries, Ms. Mitchell was left with only one parathyroid gland which was subsequently removed by Dr. Kayem.

of which confirmed that the nodule was cancerous. Dr. Kayem advised Ms. Mitchell that surgery was necessary to treat the cancer. Five days before the surgery was scheduled, Ms. Mitchell visited Dr. Kayem's office to schedule pre-operation procedures and, during that visit, she signed a consent form for the planned surgery. Ms. Mitchell signed the same consent form again on the morning of the surgery. The surgery involved removal of a 4x2 centimeter lump and three nodules in the right side of Ms. Mitchell's neck. Additionally, Dr. Kayem removed all remaining thyroid tissue, including Ms. Mitchell's last parathyroid gland, because the tissue and gland were inextricably involved in the malignant tissue.

Ms. Mitchell returned to Dr. Kayem's office for a follow-up visit after the surgery complaining of tingling in her hands and feet, lip and eye problems, chest pains, and hoarseness. Dr. Kayem prescribed medication to control Ms. Mitchell's tetany, and he recommended that Ms. Mitchell start radiation therapy. Ms. Mitchell visited Dr. Hainsworth, an oncologist, for her radiation therapy still complaining of hoarseness. Dr. Hainsworth suspected that Ms. Mitchell was suffering from hypoparathyroidism and a paralyzed vocal cord caused by the surgery. The paralysis of her vocal cord was confirmed by Dr. Weiss. Ms. Mitchell underwent another surgery for a Silastic implant procedure to medialize her vocal cord which returned Ms. Mitchell's voice to full capacity.

Ms. Mitchell sued Dr. Kayem under the theories of battery and lack of informed consent for failure to inform her of the risks of vocal cord paralysis and loss of parathyroid function associated with the surgery.[2] Ms. Mitchell testified in her deposition that she did not learn of these risks until after the surgery was performed. Ms. Mitchell further testified in her deposition that, had she been told of the potential loss of her parathyroid gland and the potential damage to her recurrent laryngeal nerve, she would not have had the surgery. When asked if she would not have had surgery at all, Ms. Mitchell testified that she did not necessarily mean that she would not have had the surgery, but that she probably would have gone to Vanderbilt Hospital or another Nashville hospital and would have sought a second opinion. Ms. Mitchell later testified that it was highly probable that she would have had the surgery to treat her cancer. In her brief, Ms. Mitchell conceded that she would have undergone the surgery whether or not the inherent risks of the procedure were disclosed, because such surgery was necessary, but she reiterated that she would have sought a second opinion and would have chosen treatment at a Nashville facility.

In his affidavit, Dr. Kayem states that surgery was the only treatment available to Ms. Mitchell in order for her to avoid progression of the cancer. He further states that potential injury to the recurrent laryngeal nerve, which affects the vocal cords, and to the parathyroid glands, which control calcium levels in the body, are known and recognized risks of this surgery which can occur in the hands of the most competent surgeon in the absence of negligence. According to Dr. Kayem, these risks were greater for Ms. Mitchell because of her two previous instances with cancer and her

---

[2]Ms. Mitchell initially sued both Dr. Kayem and Dr. William R. Stewart, d/b/a Columbia Ear, Nose & Throat; however, Ms. Mitchell agreed that Dr. Stewart should be dismissed from this action pursuant to Rule 41 of the Tennessee Rules of Civil Procedure, and the trial court entered an order to that effect on August 27, 1999.

four prior surgeries in which all but one of her parathyroid glands were removed. Dr. Kayem asserts that the removal of the remaining parathyroid gland was unavoidable.

Based upon the facts in evidence, Dr. Kayem filed a motion for summary judgment. In light of the Tennessee Supreme Court's opinion in *Ashe v. Radiation Oncology Associates*, 9 S.W.3d 119 (Tenn. 1999), the trial court determined the issue for summary judgment to be whether a reasonable person in Ms. Mitchell's position would have consented to the surgery had she been advised of the significant risk of injury to the laryngeal nerve and its effect on the vocal cord, and the potential loss of her parathyroid function and the effects thereof. In the *Ashe* opinion, the court stated the issue to be "whether a reasonable patient in Ms. Ashe's position would have chosen a different course of treatment." *Ashe*, 9 S.W.3d at 124. Based upon this language from *Ashe*, Ms. Mitchell argues that the phrase "different course of treatment" includes not only having the surgery, but also having someone else perform the surgery. Viewing the case in the light most favorable to Ms. Mitchell, the trial court overruled Dr. Kayem's motion for summary judgment and held that there was a question of material fact as to "whether a reasonable person in Mrs. Mitchell's position would have chosen a different course of treatment, i.e. a second opinion or surgery by a different physician." Dr. Kayem appealed the trial court's denial of his motion for summary judgment pursuant to Rule 9 of the Tennessee Rules of Appellate Procedure.

Our review of a motion for summary judgment involves purely a question of law, so no presumption of correctness attaches to the lower court's judgment, and our task is confined to reviewing the record to determine whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been met. *See* Tenn. R. App. P. 13(d); *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). Rule 56.03 of the Tennessee Rules of Civil Procedure provides that summary judgment is appropriate when: (1) there is no genuine issue of material fact relevant to the claim or defense contained in the motion; and (2) the moving party is entitled to a judgment as a matter of law on the undisputed facts. *See* Tenn. R. Civ. P. 56.03. The burden of proving that such a motion satisfies these requirements lies with the moving party. *See Bain*, 936 S.W.2d at 622. When the moving party makes a properly supported motion, however, the burden then shifts to the nonmoving party to set forth specific facts that establish the existence of disputed, material facts which must be resolved by the trier of fact. *See id.* On appeal, we must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in his favor. Summary judgment should be granted only when both the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion. *See id.*

The case now before us is premised on lack of informed consent because Ms. Mitchell did, in fact, authorize the surgery performed by Dr. Kayem, yet she alleges that she was not informed of the inherent risks of the procedure. A case premised on lack of informed consent arises when the patient is aware that a procedure will be performed but is unaware of the risks associated with such procedure. *See Ashe v. Radiation Oncology Assocs.*, 9 S.W.3d 119, 121 (Tenn. 1999). A patient seeking damages in such a claim must prove that the physician's conduct fell below the applicable

standard of care[3] and that a reasonably prudent person in the patient's position would not have consented to the procedure if suitably informed of the inherent risks.

A physician is required to disclose enough information about the procedure involved and its attendant risks to enable the patient to make an intelligent decision and thereby give his consent to the procedure. *See Shadrick v. Coker*, 963 S.W.2d 726, 732 (Tenn. 1998); *Cardwell v. Bechtol*, 724 S.W.2d 739, 750 (Tenn. 1987). Typically, a physician must disclose the nature of the patient's ailment; the nature of and the reasons for the treatment or procedure; the risks involved with such treatment or procedure; whether such procedure is experimental; alternative methods of treatment along with the risks and benefits associated with it; and the patient's prospects for success. *See Shadrick*, 963 S.W.2d at 732. Whether the information disclosed to a patient is sufficient depends upon "the nature of the treatment, the extent of the risks involved, and the standard of care [applicable to the defendant health care provider]." *See id.* (quoting *Cardwell*, 724 S.W.2d 739, 749). A physician is not, however, required to disclose every aspect of the proposed treatment or procedure or to discuss every possible risk involved. *See Shadrick*, 963 S.W.2d at 733.

In *Ashe*, the Tennessee Supreme Court adopted the objective standard for evaluating causation in informed consent cases. Accordingly, a patient must also prove that a reasonably prudent person in the patient's position would not have consented to the procedure if he had been suitably informed of all perils bearing significance. *See Ashe*, 9 S.W.3d at 122. Under this standard, the failure by a physician to disclose significant, inherent risks of the proposed procedure is, however, not a direct cause of the injury suffered by the patient unless a reasonably prudent person would not have consented to the treatment if informed of those risks. *See Simons v. Georgiade*, 286 S.E.2d 596 (N.C. Ct. App. 1982). The *Ashe* court further instructed that a patient's testimony as to whether he would have consented to the proposed medical procedure upon full disclosure of the risks involved is relevant but is not controlling. *See Ashe*, 9 S.W.3d at 122, 124. In applying the objective standard, the finder of fact may take into account the personal characteristics of the patient, such as his idiosyncracies, fears, religious beliefs, age, and medical condition. *See Ashe*, 9 S.W.3d at 124. Accordingly, the *Ashe* court determined that the standard in informed consent cases is "whether a reasonable person in [the patient's] position would have chosen a different course of treatment." *Id.* at 124.

As previously stated, Ms. Mitchell initially testified in her deposition that, had she been told of the potential loss of her parathyroid gland and the potential damage to her recurrent laryngeal

---

[3]Section 29-26-118 of the Tennessee Code provides

**Proving inadequacy of consent.**- In a malpractice action, the plaintiff shall prove by evidence as required by § 29-26-115(b) that the defendant did not supply appropriate information to the patient in obtaining informed consent (to the procedure out of which plaintiff's claim allegedly arose) in accordance with the recognized standard of acceptable professional practice in the profession and in the specialty, if any, that the defendant practices in the community in which the defendant practices and in similar communities.

Tenn. Code Ann. §29-26-118 (2000).

nerve, she would not have had the surgery. When asked if she would not have had surgery at all, Ms. Mitchell testified that she did not necessarily mean that she would not have had the surgery, but that she probably would have gone to Vanderbilt Hospital or another Nashville hospital and would have sought a second opinion. Ms. Mitchell later testified that it was highly probable that she would have had the surgery to treat her cancer. In her brief, Ms. Mitchell conceded that she would have undergone the surgery whether or not the inherent risks of the procedure were disclosed, because such surgery was necessary, but she reiterated that she would have sought a second opinion and would have chosen treatment at a Nashville facility.

In his affidavit, Dr. Kayem stated that the surgery he performed on Ms. Mitchell was necessary in that it was the only treatment available to avoid progression of Ms. Mitchell's disease and her untimely death. He further stated that the risks of the procedure were known and recognized complications of the surgery performed and that they could occur in the hands of the most competent surgeons in the absence of negligence. Ms. Mitchell failed to present expert medical testimony to the contrary. Additionally, Ms. Mitchell failed to present expert medical testimony to establish that Dr. Kayem's conduct fell below the standard of care. In the present case, it is not refuted that the risks associated with Ms. Mitchell's surgery would be the same if performed by any competent surgeon.

Ms. Mitchell contends that, while she would not have declined the procedure, she would have chosen another physician to perform the surgery had she been fully informed. She interprets the *Ashe* court's language of "different course of treatment" to include not only a different medical procedure, but also choosing a different surgeon to perform the same medical procedure. We disagree. Treatment is defined as "the action or manner of treating a patient medically or surgically" while procedure is defined as "a particular way of accomplishing something or of acting." ***Merriam-Webster's Medical Desk Dictionary*** 728, 576 (1993). As we interpret the language in *Ashe*, treatment or procedure refers to the type of procedure and the manner of performing it rather than to the person performing the procedure. This interpretation is supported by the language of the *Ashe* court itself: "The jury . . . should have been allowed to decide whether a reasonable person in Ms. Ashe's position would have consented to ***the radiation therapy*** had the risk of paralysis been disclosed." ***Id.*** at 124 (emphasis added).

Ms. Mitchell signed a medical consent form in which she gave her express consent to the medical procedure performed by Dr. Kayem. The consent form contained the following language:

> 2.     I consent to the performance of operations and procedures in addition to or different from those now contemplated, whether or not arising from presently unforeseen conditions, which the above named doctor or his associates or assistants may consider necessary or advisable in the course of the operation.
>
> . . . .

4.    The nature and purpose of the operation, possible alternative methods of treatment, the risks involved, the possible consequences, and the possibility of complications, such as necrosis of tissue, infections, unassociated heart attack, cardiac arrest, uncontrollable bleeding, allergic reactions or blood clots, have been explained to me by

Dr. <u>Kayem</u> and I understand such explanation. <u>/s/ SM</u>

Generally, the law presumes that a person who has signed a document, after having an opportunity to read it, is bound by his signature. ***See Solomon v. First Tenn. Bank***, 774 S.W.2d 935, 943 (Tenn. Ct. App. 1989). This presumption applies in informed consent cases; thus, the existence of a signed consent form gives rise to a presumption that the patient gave his consent, absent misrepresentation, inadequate disclosure, forgery, or the patient's lack of capacity. ***See Church v. Perales***, _____ S.W.3d _____ (Tenn. Ct. App. forthcoming 2001). Ms. Mitchell signed the medical consent form on two separate occasions. Additionally, she did not introduce expert testimony to prove that Dr. Kayem failed to disclose risks associated with the surgery that a reasonable physician would have disclosed under similar circumstances. Further, Ms. Mitchell testified in her deposition that, had she been informed of the risks associated with her surgery, it was highly probable that she would have had the surgery but that she would have sought a second opinion and a more experienced surgeon. Because Ms. Mitchell conceded in her brief that she would indeed have undergone the same procedure even if the risks had been disclosed to her and because we believe that the language in *Ashe* strictly refers to the medical procedure, we find that no question of fact remains for the trier of fact.

In summary, it is not disputed that the surgery was necessary to avoid progression of the disease and ultimately death. Ms. Mitchell was first diagnosed with papillary carcinoma in the neck area in 1986. At the time of her surgery in May, 1997, she was approximately twenty-nine years of age. Recognizing her condition, she ultimately conceded she would have had the surgery, regardless of whether the risks had been made known to her. She argues that she would have sought a more experienced surgeon. However, Dr. Kayem states in his affidavit that the risk of the complications suffered by Ms. Mitchell were greater because of her previous surgeries; the surgery he performed required the removal of the remainder of her thyroid tissue, which contained the parathyroid gland; her thyroid tissue and parathyroid gland were inextricably involved in the malignant tissue and therefore the resultant hypocalcemia due to the removal of her last parathyroid gland was unavoidable; the only alternative to Ms. Mitchell was the same surgical procedure performed by another surgeon; and the generally accepted occurrence rate for these unknown risks and complications of the procedures applies uniformly to all qualified surgeons, regardless of their skill level. Therefore, the possibility of the risks and/or complications occurring to Ms. Mitchell would not have been different in the hands of another surgeon. The possibility of Ms. Mitchell's outcome was the same in the hands of any and all qualified surgeons. These statements in his affidavit are not refuted.

Accordingly, we find that no disputed, material fact exists to be resolved by the trier of fact; thus, Dr. Kayem is entitled to a judgment as a matter of law. We hereby reverse the trial court's denial of Dr. Kayem's motion for summary judgment, and remand this cause for an entry of judgment in favor of Dr. Kayem. The costs of this appeal are taxed to the appellee, Ms. Sandra Mitchell, and her surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE