IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
April 17, 2002 Session

# PELILIA SAN JUAN-TORREGOSA, *et al.*, v. ENGRACIA TORREGOSA GARCIA, ROMULO G. GARCIA, ROEL T. GARCIA, RONALD T. GARCIA, IMELDA GARCIA-MARGULIES, and ZERLINA GARCIA-WALDROP, and ST. MARY'S HOSPICE CENTER and RANDALL E. NICHOLS, ESQ.

**Direct Appeal from the Chancery Court for Knox County**
**No. 151792-2     Hon. Daryl R. Fansler, Chancellor**

**FILED MAY 7, 2002**

**No. E2001-02906-COA-R3-CV**

Patient in "chronic vegetative state" is on life support, i.e., nutrition by "percutaneous endoscopic gastrostomy". The Trial Court found by clear and convincing evidence that patient would not want to be subjected to artificial nutrition. However, the Court ruled since she had not executed a living will, the Court had no authority to authorize discontinuance of the artificial nutrition. On appeal, we reverse.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Reversed.**

HERSCHEL PICKENS FRANKS, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and D. MICHAEL SWINEY, J., joined.

Gerald L. Gulley, Jr., Knoxville, Tennessee, for Appellant, Engracia Torregosa Garcia, by and through the Guardian Ad Litem, Gerald L. Gulley, Jr.

David T. Lewis, Knoxville, Tennessee, for St. Mary's Health System, Inc., d/b/a St. Mary's Hospice Center.

Kenneth W. Holbert, Knoxville, Tennessee, for Appellees.*

---

*Appellees by and through counsel gave notice to the Court that they "elected not to participate in the appellate process" and did not file a brief..

# OPINION

Engracia Torregosa Garcia is a patient at St. Mary's Hospice Center in Knoxville, and she is sustained through artificial hydration and nutrition.

This action was initiated by Ms. Garcia's mother and siblings, alleging that Ms. Garcia had been a patient at Methodist Medical Center prior to being moved to the Hospice, and that while at the Methodist Medical Center, she was "on life support consisting of intravenous hydration and nutrition by percutaneous endoscopic gastrostomy (PEG)". Appellees further allege that when Ms. Garcia was moved to the Hospice, she was not provided with the PEG life support. Responding to the Petition, the Chancellor appointed a Guardian Ad Litem for Ms. Garcia, and also an Attorney Ad Litem for Ms. Garcia. A Restraining Order was issued, directing the Hospice to provide the nourishment to Ms. Garcia.

At the conclusion of the trial, the Chancellor issued an injunction requiring the Hospice to provide nourishment as sought in the Petition. Ms. Garcia, by and through the Guardian Ad Litem, Gerald L. Gulley, Jr., and St. Mary's Health Care System have appealed.

The evidence at trial established that Ms. Garcia suffered a cardiac arrest on or about July 2, 2001, and although she was later resuscitated, she suffered oxygen deprivation to her brain for more than ten minutes, and is in a chronic vegetative state. Medical opinion established that she is breathing reflexively, but there is no evidence that she will be able to recover "cortical functions". Ms. Garcia also has metastatic breast cancer. Ms. Garcia's treating physician, Dr. Richard Parrish, testified at trial that he practices pulmonary medicine, and is also a critical care medicine specialist. He explained that being a critical care specialist involved knowledge of and training in critical illnesses of the heart and lungs, neurologic disease and infections. He opined within a reasonable degree of medical certainty that Ms. Garcia would not recover and that he had never seen anyone in her condition recover. He stated that Ms. Garcia was functioning on a low brain level, where the brain stem kept her blood circulating, maintained blood pressure, and maintained respiration, and she is in a persistent vegetative state and her chance of recovering any cortex activity was zero. The doctor was asked about his discussions with the family regarding Ms. Garcia's transfer to the Hospice, and he said that he felt the Hospice was the best alternative. He further stated that he discussed the discontinuation of artificial nutrition and hydration with the family, and that they had ultimately decided to continue the fluids but stop the nutrition, which he felt was reasonable. He explained that, in the absence of a written directive from the patient, his practice was to allow the spouse to make the decision regarding the withholding or withdrawal of treatment, based on advice from the hospital's attorney, and that this is what he has done for years.

When asked why Ms. Garcia had been given life support in the first place, he explained that although her injury initially seemed very severe, he could not say from the beginning

whether she would recover, and wanted to give her every chance to improve if she could.

On October 29, 2001, the Trial Court entered an Order of Final Judgment and Permanent Injunction. The Trial Court found that pursuant to the U.S. Supreme Court's ruling in *Cruzan v. Director of Missouri Health Dept.*, 497 U.S. 261 (1990), a person has a constitutional right to make a determination as to whether to accept or reject medical treatment, including artificial nutrition and hydration. The Trial Court stated that it was willing to concede, for the purposes of this case, that a living will or other document was not necessary to allow a person to exercise their fundamental and inherent right to die naturally and with dignity, and to refuse or withdraw from medical care.

The Court further found as a matter of fact that the appellants had shown by clear and convincing evidence that Ms. Garcia would not wish to be subjected to artificial nutrition and hydration, and if she were competent, that would be the expression of her wishes. However, the Court found as a matter of law, that the general assembly had required in Tenn. Code Ann. §32-11-103(5) that a person wishing to authorize the withholding of artificial nutrition and hydration could do so only by the inclusion of specific language in a living will or power of attorney. The Court ruled the temporary restraining order should be made permanent, and the Hospice and the relatives were permanently enjoined from withholding nourishment from Ms. Garcia. The Court also entered an Order appointing Ms. Garcia's husband as conservator of her financial affairs.

Appellants assert that the Trial Court erred in refusing to allow Ms. Garcia's family to terminate the artificial nutrition and hydration which is keeping her body alive, and thereby failing to honor her wishes and denying her constitutional right to bodily integrity.

Most states have recognized that a person has the right to refuse unwanted medical treatment. Many states have found that this right stems from the common law right to be free from any type of medical treatment without giving informed consent. *See In re Estate of Longeway*, 549 N.E.2d 292 (Ill. 1989); *In re Gardner*, 534 A.2d 947 (Me. 1987); *Mack v. Mack*, 618 A.2d 744 (Md. 1993); *Guardianship of Jane Doe*, 583 N.E.2d 1263 (Mass. 1992); *In re Martin*, 538 N.W.2d 399 (Mich. 1995); *In re Conroy*, 486 A.2d 1209 (N.J. 1985); *Matter of Westchester County Medical Center*, 531 N.E.2d 607 (N.Y. 1988).

Some states have grounded this right in the federal (and sometimes state) constitutional right to privacy and self-determination. *See In re Guardianship of Browning*, 568 So. 2d 4 (Fla. 1990); *State v. Vogel*, 537 N.W.2d 358 (N.D. 1995); *In the Matter of Grant*, 747 P.2d 445 (Wash. 1987). Still others have found that the right exists pursuant to both constitutional sources and the common law. *See Rasmussen v. Fleming*, 741 P.2d 674 (Ariz. 1987); *Foody v. Manchester Memorial Hospital*, 482 A.2d 713 (Conn. Super. Ct. 1984); *In re Torres*, 357 N.W.2d 332 (Minn. 1984); *In the Matter of Guardianship of L.W.*, 482 N.W.2d 60 (Wis. 1992).

Tennessee clearly recognizes the right of a competent adult to bodily integrity and self-determination in informed consent cases, and that a competent person can refuse medical

treatment. *See Ashe v. Radiation Oncology Associates*, 9 S.W.3d 119 (Tenn. 1999); *Shadrick v. Coker*, 963 S.W.2d 726 (Tenn. 1998); *Church v. Perales*, 39 S.W.3d 149 (Tenn. Ct. App. 2000). *See also State v. Ruane*, 912 S.W.2d 766 (Tenn. Crim. App. 1995). This Court has held that the citizens of our state are afforded a greater right of privacy by the Tennessee Constitution than that provided in the Federal Constitution, and that ". . . the Tennessee Constitution and especially the Declaration of Rights in Article I, indicate a strong historic commitment by the citizens of this State to individual liberty and freedom from governmental interference in their personal lives. Our Supreme Court noted this commitment in *Davis*". (*Davis v. Davis*, 842 S.W.2d 588 (Tenn. 1992). *Campbell v. Sundquist*, 926 S.W.2d 250 (Tenn. Ct. App. 1996), p.259.

The United States Supreme Court in *Cruzan v. Director, Missouri Dept. of Health*, 497 U.S. 261, 110 S. Ct. 2841 (1990), recognized that a competent person had a constitutionally protected liberty interest in refusing unwanted medical treatment. The Court stopped short of finding that an incompetent person would have the same right, however, the court said:

> An incompetent person is not able to make an informed and voluntary choice to exercise a hypothetical right to refuse treatment, or any other right. Such a "right" must be exercised for her, if at all, by some sort of surrogate. Here, Missouri has in effect recognized that under certain circumstances a surrogate may act for the patient in electing to have hydration and nutrition withdraw in such a way as to cause death, but it has established a procedural safeguard to assure that the action of the surrogate conforms as best it may to the wishes expressed by the patient while competent. Missouri requires that evidence of the incompetent's wishes as to the withdrawal of treatment be proved by clear and convincing evidence. The question, then, is whether the United States Constitution forbids the establishment of this procedural safeguard by the State. We hold that it does not.

*Id*. at 280.

Tennessee's public policy on this issue is set forth in the Legislative intent section of the Tennessee Right to Natural Death Act, codified at Tenn. Code Ann. §32-11-102. This statute reads:

> The general assembly declares it to be the law of the state of Tennessee that every person has the fundamental and inherent right to die naturally with as much dignity as circumstances permit and to accept, refuse, withdraw from, or otherwise control decisions relating to the rendering of the person's own medical care, specifically including palliative care and the use of extraordinary procedures and treatment.

This policy belongs to every person, and does not distinguish between those who are competent and those who are not. In *State Dept. of Human Services v. Northern*, 563 S.W.2d 197 (Tenn. Ct. App. 1978), an elderly person was found to be incompetent to make a decision regarding whether to amputate her feet, and the Department of Human Services petitioned the court for

-4-

guidance regarding whether the patient should undergo surgery without her consent. The Court found that, based on the testimony of several medical professionals, that the state was entitled to take action to preserve the patient's life. The Court opined, "If the patient would assume and exercise her rightful control over her own destiny by stating that she prefers death to the loss of her feet, her wish would be respected. The doctors so testified, this Court so informed her; and this Court here and now reiterates its commitment to this principle." *Id.*

In his concurring opinion, Judge (now Chief Justice) Drowota stated that he was generally in agreement with the principle that an individual had a right to refuse treatment so long as that individual was competent. *Id.* at 213. He also stated that when an individual was incompetent to make such a decision, the state had a duty to become involved by trying to determine what "the desires of the patient would have been had he been conscious and competent", and that the initial assumption would be that the patient desired lifesaving treatment unless that assumption was contradicted by previous statements made when competent. *Id.* As further evidence of the State of Tennessee's recognition of the right of an incompetent patient to not be subjected to unwanted medical treatment, the legislature has provided several means by which an individual's right to consent to or refuse treatment can be exercised where an individual is incompetent. Tenn. Code Ann. §32-11-101 *et seq.* provides that a person can execute a living will which shall control certain medical decisions in the event the person subsequently becomes incompetent. Tenn. Code Ann. §34-6-201 *et seq.* provides for decision-making authority to be transferred to someone else upon the patient's incompetency by way of a durable power of attorney for health care. Tenn. Code Ann. §34-3-101 *et seq.* provides that a conservator can be appointed for a disabled adult, and that such conservator can be vested with the right to give or refuse consent to medical treatment. Tenn. Code Ann. §34-3-104(8). It is clear that from State Court decisions, artificial nutrition and hydration are to be included in the realm of medical treatment which a patient has a right to refuse. The American Medical Association concurs in this assessment, as stated in an ethics opinion on the subject:

> Even if death is not imminent but a patient's coma is beyond doubt irreversible and there are adequate safeguards to confirm the accuracy of the diagnosis and with the concurrence of those who have responsibility for the care of the patient, it is not unethical to discontinue all means of life-prolonging medical treatment. Life-prolonging medical treatment includes medication and artificially or technologically supplied respiration, nutrition or hydration.

*American Medical Association Council on Ethics and Judicial Affairs*, Opinion 2.18 (1986).

Tenn. Code Ann. §32-11-103(5) specifically states that medical care includes "artificial or forced feeding of nourishment, hydration, or other basic nutrients".

In this case, the Trial Court found based upon Tenn. Code Ann. §32-11-103(5), that an incompetent person's right to refuse artificial nutrition and hydration could only be exercised by a valid written document (living will or durable power of attorney) which contained the language found in the statutory section.

The trial court felt that this section evidenced a goal of the legislature to limit these types of decisions to a written expression of the individual's intent.

Tenn. Code Ann. §32-11-103(5) states:

"Medical care" includes any procedure or treatment rendered by a physician or health care provider designed to diagnose, assess or treat a disease, illness or injury. These include, but are not limited to: surgery; drugs; transfusions; mechanical ventilation; dialysis; cardiopulmonary resuscitation; artificial or forced feeding of nourishment, hydration or other basic nutrients, regardless of the method used; radiation therapy; or any other medical act designed for diagnosis, assessment or treatment or to sustain, restore or supplant vital body function. **This part shall not be interpreted to allow the withholding or withdrawal of simple nourishment or fluids so as to condone death by starvation or dehydration unless the provisions of the instrument which creates a living will or durable power of attorney for health care include the following or substantially the following: "I authorize the withholding or withdrawal of artificially provided food, water or other nourishment or fluids";**

(Emphasis added).

When initially enacted, this section did not contain the emphasized language, but said: "In no case shall this section be interpreted to allow the withholding of simple nourishment or fluids so as to condone death by starvation or dehydration." Tenn. Code Ann. §32-11-103(5) (1985). In 1987, this section was interpreted by the Attorney General to prohibit the withholding of basic nutrients whether by intravenous feeding, tube feeding, or any other type of artificial feeding. *See* Tenn. Op. Atty. Gen. No. 87-21. In 1991, the legislature amended the Act by deleting this prohibition, and substituting:

This part shall not be interpreted to allow the withholding of simple nourishment or fluids so as to condone death by starvation or dehydration unless the provisions of the instrument which creates a living will include the following or substantially the following language:

I authorize the withholding of artificially provided food, water, or other nourishment or fluids.

1991 Tenn. Pub. Acts Ch. 167.[1]

---

[1] That same year, the legislature amended the statute again to add "withdrawal" along with "withholding" in the above definition, and amended the statutory living will form to include a specific provision regarding artificially provided nourishment and fluids. 1991 Tenn. Pub. Acts Ch. 344.

The Chancellor's construction of this provision, would render this section of the statute in conflict with other sections of the statute. For example, in the "legislative intent" section of this statute, Tenn. Code Ann. §32-11-102, the general assembly declared that it is the "law of the state of Tennessee that every person has the fundamental and inherent right to die naturally with as much dignity as circumstances permit and to accept, refuse, withdraw from, or otherwise control decisions relating to the rendering of the person's own medical care", and that the general assembly "further" empowered the exercise of this right by providing that persons can execute a living will. Use of the word "further" establishes that a living will is an additional way that one can exercise this right declared to be fundamental and inherent.

The Trial Court's construction also conflicts with the provisions of Tenn. Code Ann. §32-11-110(d), which states "Nothing in this chapter shall impair or supersede any legal right or legal responsibility which any person may have to effect the withholding or withdrawal of medical care in any lawful manner. In such respect, the provisions of this chapter are cumulative", this language suggests that a living will is merely one way that a person can exercise her right to refuse medical care. Further, Tenn. Code Ann. §32-11-110(e) states that "This chapter shall create no presumption concerning the intention of an individual who has not executed a declaration to consent to the use, withholding, or withdrawal of medical care." Accordingly, the fact that a person has not executed a living will does not create any presumption that they would not want medical treatment withdrawn or withheld.

Clearly, the Chancellor's rationale does not comport with the legislative intent expressed in the statute. The Living Will Statute, when read in its entirety, recognizes that individuals in this State have the fundamental and inherent right to refuse medical care, and that medical care includes the provision of artificial nutrition and hydration. The statute provides one way that the individual's rights may be exercised, and the fact that an individual has not executed a living will does not create any presumption that that individual would not necessarily exercise her right to refuse medical care. Tenn. Code Ann. §32-11-110. Other jurisdictions which have enacted living will statutes who have addressed this issue are in accord with this interpretation. *See DeGrella v. Elston*, 858 S.W.2d 698 (Ky. 1993); *In re Fiori*, 673 A.2d 905 (Pa. 1996); *In re Tavel*, 661 A.2d 1061 (Del. 1995); *In re Gardner*, 534 A.2d 947 (Me. 1987); *Matter of Westchester County Medical Center,* 531 N.E.2d 607 (N.Y. 1988).

We concur with the Trial Court's fact finding that evidence is clear and convincing that Ms. Garcia would not want to be kept alive by artificial means and that her wishes, expressed while she was competent, would be to have these services discontinued. Courts have the duty to protect and when necessary enable individuals to exercise his or her Constitutional Rights. We Order this matter remanded and direct the Chancellor appoint a conservator to carry out Ms. Garcia's wishes, including the refusal for medical care. Tenn. Code Ann. §34-3-104. The requisites for the appointment are established in this case, as there is clear and convincing evidence of Ms. Garcia's incompetence, and the statute contains a priority list of persons to be considered for the appointment. Since Ms. Garcia had no written preference, her husband would be the first choice to act as her conservator and make medical decisions for her. *See* Tenn. Code Ann. §34-1-126 and §34-3-103.

We reverse the Judgment of the Trial Court and remand for proceedings in accordance with this Opinion.  The costs of the appeal are assessed to the Appellees.

_____
HERSCHEL PICKENS FRANKS, J.