IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 19, 2013 Session

**IKE J. WHITE, III v. DAVID A. BEEKS, M.D.**

**Appeal from the Circuit Court for Bradley County**
**No. V-07-554     J. Michael Sharp, Judge**

**No. E2012-02443-COA-R3-CV-FILED-DECEMBER 9, 2013**

D. MICHAEL SWINEY, J., dissenting.


        I respectfully dissent from the decision of the majority to affirm the Trial Court.
I believe the Trial Court did commit reversible error when it limited Plaintiff's medical
expert's testimony at trial regarding the standard of care in this health care liability informed
consent action.  Specifically, I do not believe that the Plaintiff's expert's testimony on what
risks should have been disclosed to the Plaintiff to meet the acceptable standard of care for
informed consent should have been limited to disclosure of only those risks that actually
came to pass.

        I agree with the majority when it states in discussing *Ashe v. Radiation
Oncology Associates*, 9 S.W.3d 119 (Tenn. 1999) that:

> The Supreme Court found that the "majority" approach, the objective standard,
> emanated from the *Canterbury* decision, wherein the D.C. Circuit Court of
> Appeals held that "causation in informed consent cases is better resolved on
> an objective basis 'in terms of what a prudent person in the patient's position
> would have decided if suitably informed of *all* perils bearing significance.'"
> *Ash*e, 9 S.W.3d at 122 (quoting *Canterbury v. Spence,* 464 F2d 772, 791 (D.C.
> Cir.1972)).

(emphasis added).

        The majority goes on to quote our Supreme Court further:

> The finder of fact may consider and give weight to the patient's testimony as
> to whether the patient would have consented to the procedure upon full

disclosure of the risks.  When applying the objective standard, the finder of fact may also take into account the characteristics of the plaintiff including the plaintiff's idiosyncrasies, fears, age, medical condition, and religious beliefs. Accordingly, the objective standard affords the ease of applying a uniform standard and yet maintains the flexibility of allowing the finder of fact to make appropriate adjustments to accommodate the individual characteristics and idiosyncrasies of an individual patient.  We, therefore, hold that the standard to be applied in informed consent cases is whether a reasonable person in the patient's position would have consented to the procedure or treatment in question if adequately informed of *all* significant perils. [*Ashe*, 9 S.W.3d at 123-24].

(emphasis added) (footnote omitted).

The relevant aspect here of our Supreme Court's holding in *Ashe* on informed consent is that the finder of fact, here a jury, has to determine whether or not "a reasonable person in the patient's position would have consented to the procedure or treatment in question if adequately informed of *all* significant perils."  *Ashe*, 9 S.W.3d at 124 (emphasis added).  What the majority's opinion does, and what was done by this Court in *Bryant v. Bauguss*, No. 03A01-9603-CV-00105, 1996 WL 465539, 1996 Tenn. App. LEXIS 473 (Tenn. Ct. App. Aug. 16, 1996), *no appl. perm. appeal filed*, is to hold that a plaintiff in a health care liability informed consent case must prove that the health care provider deviated from the acceptable standard of professional practice by not disclosing all significant perils as required by the acceptable standard of professional practice.  At the same time, the plaintiff will be prohibited from informing the trier of fact exactly what all those significant perils were that the acceptable standard of professional practice required that the patient be told about.  In short, the finder of fact will not be presented with evidence concerning the actual standard of care concerning informed consent in a health care liability case such as now before us, but instead will be misled into believing that informed consent required only that the patient be told about the particular risk or risks that actually came to pass before he decided whether to undergo the treatment or procedure.  This means that the finder of fact will be mislead as to what risks the actual acceptable standard of care required a health care provider to inform his patient about in order to obtain informed consent.  Further, this means that the courts have determined that the acceptable standard of care concerning informed consent as to the exact same treatment or procedure will vary from case to case dependent upon what risk or risks actually come to pass in a particular case.

While hypothetical examples often are dangerous, I believe a simple one is appropriate here.  In this example, a physician proposes to a patient that the patient have a particular type of procedure.  This procedure has only two significant perils or risks

associated with it, and it is undisputed that the acceptable standard of professional practice is that a physician disclose and discuss both perils or risks with the patient in order to obtain the patient's informed consent. Risk number 1 is a one percent (1%) chance of partial paralysis. Risk number 2 is a fifty percent (50%) chance the patient will die on the operating table. In this example, the physician discloses neither of these two significant risks as required by the acceptable standard of care for informed consent. The procedure is performed and the hypothetical patient suffers partial paralysis. The patient files a health care liability informed consent action claiming that if he had been given information concerning the risks as required by the acceptable standard of care, including being informed of the fifty percent (50%) chance of dying on the operating table, he never would have consented to the procedure in the first place. Under the majority's decision, the finder of fact is going to be presented not with what the acceptable standard of care actually required as to informed consent, but instead only a portion of the acceptable standard of care as concerns the disclosure of information, in this hypothetical the one percent chance of partial paralysis, and then incorrectly told that is the acceptable standard of care. The finder of fact then, somehow, is to make an objective determination of whether or not the patient would have consented to the procedure if he had been fully informed of *all* significant risks in compliance with the acceptable standard of care even though the finder of fact has been misled as to what the acceptable standard of care required the defendant to disclose to the patient concerning the risks in order to obtain the patient's informed consent, and has been told only of the duty to disclose the risk which came to pass, *i.e.*, the partial paralysis.

In this example, the jury might well decide, objectively, that the patient would have consented to the procedure even if he had been told of the one percent (1%) chance of partial paralysis because the potential benefits outweighed this risk. It might very well be an entirely different answer by the jury as to whether or not the patient, objectively, would have consented to the procedure if the jury had been presented with what the acceptable standard of care *actually* required the patient be told about the risks in order to obtain the hypothetical patient's informed consent, which would include the fifty percent (50%) risk of his dying on the operating table.

I respectfully contend that the majority's opinion is not consistent with what the law requires in a health care liability informed consent action. What risks the actual acceptable standard of care requires a health care provider to inform the patient about is immaterial under the majority's decision. The finder of fact, here the jury, is going to be told that it is being presented with evidence as to what the acceptable standard of care is as to obtaining informed consent when in reality it is being presented only with an incomplete portion of what information concerning risks must be provided to a patient to obtain informed consent. Such a position and result is inconsistent with the requirements of the relevant statute:

In a health care liability action, the plaintiff shall prove by evidence as required by § 29-26-115(b) that the defendant did not supply appropriate information to the patient in obtaining informed consent (to the procedure out of which plaintiff's claim allegedly arose) in accordance with the recognized standard of acceptable professional practice in the profession and in the specialty, if any, that the defendant practices in the community in which the defendant practices and in similar communities.

Tenn. Code Ann. § 29-26-118 (Supp. 2013).

Under my position as to what is required by Tenn. Code Ann. § 29-26-118 and relevant case law, the first question presented to the trier of fact is whether or not the health care provider informed the patient of *all* significant risks as required to be disclosed to the patient to satisfy the acceptable standard of care. If the answer to that is yes, the patient loses the informed consent lawsuit. If the answer to that is no, the patient still has to convince the trier of fact that the patient, under an objective standard, would not have consented to the medical treatment or procedure if he had been informed of all significant risks in compliance with the acceptable standard of care. If the patient fails to convince the trier of fact under the objective standard that he would not have consented to the treatment or procedure if he had been informed of all significant risks sufficient to satisfy the acceptable standard of care, the patient loses.

I believe to hold as the majority has held makes it impossible for the finder of fact to determine, utilizing an objective standard, whether the patient would have consented to the treatment or procedure upon full disclosure of all the risks as required by the acceptable standard of care. Under the majority's position, the question presented to the trier of fact instead will be whether the patient would have consented to the procedure upon disclosure of only the risk or risks that later came to fruition. That, I respectfully submit, is not the law under Tenn. Code Ann. § 29-26-118 and applicable case law. Respectfully, I believe the majority's opinion changes Tenn. Code Ann. § 29-26-118 from requiring the health care provider to obtain "informed consent" to instead requiring the health care provider to obtain only "semi-informed consent" in that the question to be presented to the trier of fact is no longer whether the health care provider adequately informed the patient of all significant perils as required by the acceptable standard of care but instead only whether the health care provider informed the patient of the particular risks that happened later to come to pass.

I take no issue with the general discussion of proximate cause and cause in fact as discussed by the majority. It is my view, however, that Tenn. Code Ann. § 29-26-118 provides that in a health care liability informed consent case proximate cause will be shown if: first,

-4-

the plaintiff shall prove by evidence as required by § 29-26-115(b) that the defendant did not supply appropriate information to the patient in obtaining informed consent (to the procedure out of which plaintiff's claim allegedly rose) in accordance with the recognized standard of acceptable professional practice in the profession and in the specialty, if any, that the defendant practices in the community in which the defendant practices or in similar communities.

Tenn. Code Ann. 29-26-118 (Supp. 2013). And second, the trier of fact then determines, applying an objective standard, that the patient "would [not] have consented to the procedure or treatment in question if adequately informed of all significant perils." *Ashe,* 9 S.W.3d at 124. In short, under the relevant statutory and case law, cause in fact and proximate cause may well be the same in a health care liability informed consent case such as the one before us.

For these reasons, I dissent from the majority's opinion. I would vacate the judgment and remand the case for a new trial.

_____
D. MICHAEL SWINEY, JUDGE