# IN THE COURT OF APPEALS OF TENNESSEE
## AT MEMPHIS[1]
April 17, 2012 Session

## STEPHANIE AND EDDIE WOODARD
### v.
## LAWRENCE B. GROSS, M.D., EDUARDO V. BASCO, M.D., AND METHODIST HEALTHCARE-MEMPHIS HOSPITALS

**Appeal from the Shelby County Circuit Court**
**No. CT-000372-10     Jerry Stokes, Judge**

---

**No. W2011-02316-COA-R3-CV - Filed September 10, 2012**

---

This is a medical malpractice case. The plaintiff patient presented at the hospital emergency room with chest pains; a stent replacement was performed. Three months later, the plaintiff's treating physician told the plaintiff that she had suffered a heart attack during the stent replacement. The plaintiff obtained all her medical records and filed a lawsuit against the surgeon who performed the stent replacement. This lawsuit was later dismissed without prejudice. After the plaintiff substituted counsel and the plaintiff's substituted attorney reviewed the medical records, the plaintiff filed a new lawsuit against the emergency room physicians, asserting that they were negligent prior to the stent replacement. The emergency room physicians filed a motion for summary judgment, based in part on the three-year statute of repose. The trial court granted summary judgment in favor of the defendant emergency room physicians, finding that the statute of repose had run on the plaintiff's claim. The plaintiff patient appeals, arguing that there is an issue of disputed fact as to whether the defendant physicians engaged in fraudulent concealment, so as to toll the time limit under the statute of repose. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and J. STEVEN STAFFORD, J., joined.

---

[1]Oral argument was heard in this case before law students at the University of Memphis Cecil C. Humphreys School of Law.

Duncan E. Ragsdale, Memphis, Tennessee for Plaintiff/Appellants Stephanie and Eddie Woodard

Katherine M. Anderson, Memphis, Tennessee for Defendant/Appellees Lawrence B. Gross, M.D. and Eduardo V. Basco, M.D.

Leigh M. Chiles and Quinn N. Carlson, Memphis, Tennessee for Defendant/Appellee Methodist Healthcare-Memphis Hospitals

**OPINION**

**FACTS AND PROCEEDINGS BELOW**

As this is an appeal from a grant of summary judgment, we recite the facts as alleged by the plaintiff in the complaint and in documents filed in connection with the summary judgment motion.[2]

On the morning of November 24, 2006, Plaintiff/Appellant Stephanie Woodard ("Mrs. Woodard") presented at the emergency room at Defendant/Appellee Methodist Healthcare-Memphis Hospitals ("Methodist"), complaining of chest pains, shortness of breath, sweating, and radiating pain in her left arm. Mrs. Woodard smoked cigarettes and had a family history of coronary disease. She was also under stress due to a recent death in her family.

In the Methodist emergency room, Mrs. Woodard was treated by Defendant/Appellee Lawrence Gross, M.D. ("Dr. Gross"). Mrs. Woodard underwent an electrocardiogram ("EKG"). Dr. Gross reviewed the results of the EKG and ordered additional tests. After Dr. Gross referred Mrs. Woodard to the care of cardiologist Eduardo Basco, M.D. ("Dr. Basco"), she was transferred to the cath lab, where Dr. Basco performed a cardiac catheterization. The cardiac catheterization indicated that Mrs. Woodard needed a stent replacement.

As a result, Dr. Basco and David Simmons, M.D. ("Dr. Simmons") performed a coronary angioplasty and a stent replacement on Mrs. Woodard. Allegedly, some issues arose while

---

[2] The trial court certified its order granting summary judgment in favor of the Defendants as final under Rule 54.02 of the Tennessee Rules of Civil Procedure. After oral argument, this Court ordered the parties to clarify whether any matters remained pending. From the parties' responses, it appears that no matters remained pending after summary judgment was entered, and the trial court's judgment was final as to all of the parties. "A final judgment is one that resolves all the issues in the case, 'leaving nothing else for the trial court to do.' " *In re Estate of Henderson*, 121 S.W.3d 643, 645 (Tenn. 2003) (quoting *State ex rel. McAllister v. Goode*, 968 S.W.2d 834, 840 (Tenn. Ct. App. 1997)).

the stent was being inserted that caused damage to Mrs. Woodard's heart. Mrs. Woodard was discharged from Methodist eleven days later, on December 5, 2006.

Mrs. Woodard continued to suffer recurrent chest pain. Almost two months later, on February 2, 2007, Stacy Smith, M.D. ("Dr. Smith"), a cardiologist with the Stern Cardiovascular Center, admitted Mrs. Woodard to Baptist Memorial Hospital ("Baptist"). Dr. Smith told Mrs. Woodard that she had had a coronary artery dissection during the November 2006 stent replacement surgery and that she had suffered an acute inferior myocardial infarction, i.e., a heart attack. This information was put in Dr. Smith's discharge summary for Mrs. Woodard. Upon learning this from Dr. Smith, Mrs. Woodard requested her medical records, and the names of all of the physicians involved in her treatment, including Drs. Gross and Basco. On March 16, 2007, Mrs. Woodard received her medical records and reviewed them.[3]

On November 26, 2007, Mrs. Woodard and her husband Plaintiff/Appellant Eddie Woodard ("Mr. Woodard") (collectively "the Woodards") filed the first lawsuit in this matter, a *pro se* civil warrant in the General Sessions Court of Shelby County, Tennessee, against Methodist, Dr. Simmons, and the Sutherland Cardiology Clinic, P.C. ("First Lawsuit"). The First Lawsuit alleged that Mrs. Woodard suffered personal injuries due to the negligence of Dr. Simmons and the Sutherland Cardiology Clinic in the performance of the stent replacement surgery at Methodist on November 24, 2006. The General Sessions complaint was dismissed with prejudice.

The Woodards appealed the General Sessions dismissal to the Circuit Court of Shelby County, Tennessee, and retained counsel. On May 14, 2008, the Woodard's attorneys filed a formal complaint in the Circuit Court, alleging medical malpractice by Dr. Simmons and Sutherland Cardiology Clinic in the course of the stent replacement on November 24, 2006. It alleged that Methodist was vicariously liable to Mrs. Woodard for Dr. Simmons' negligence. The complaint asserted that Mrs. Woodard sustained injuries during the coronary angioplasty and stent replacement performed by Drs. Simmons and Basco. Although the complaint mentions alleged negligence by Dr. Basco, Dr. Simmons was the only physician named as a defendant. The complaint made no allegations concerning the care Mrs. Woodard received in the emergency room or the cath lab in this First Lawsuit; it only alleged negligence during the stent replacement surgery. It does not mention Dr. Gross at all. The complaint in the first lawsuit recited detailed information from Mrs. Woodard's medical records:

---

[3]The record on appeal does not contain a copy of these medical records.

10. Plaintiff's third troponin level was read as being elevated at 2.12 and she was then admitted with a diagnosis of non-Q-wave myocardial infarction.

11. At 1:30 p.m., on November 24, 2006, [Dr. Basco] enlisted the aid of [Dr. Simmons] . . . and commencing at 2:19 p.m. the two doctors performed a cardiac catheterization.

12. The cardiac catheterization revealed, among other things, a finding that [Dr. Basco] interpreted to be a right posterior descending artery stenosis, which [he] diagnosed to be the cause of [Mrs. Woodard's] non-Q-wave myocardial infarction.

13. At 2:37 p.m., following this finding, the cardiac catheterization was expanded to include a[n] . . .angioplasty and stent replacement.

In March 2009, the attorneys who represented the Woodards in the First Lawsuit withdrew from representing them. About a month later, they retained their counsel in this appeal, Duncan E. Ragsdale ("Attorney Ragsdale").

Upon being retained, Attorney Ragsdale reviewed the medical records given to the Woodards in March 2007. In May 2009, after reviewing the records, Attorney Ragsdale informed Mrs. Woodard that, in addition to the complications that occurred during the stent replacement surgery, Attorney Ragsdale was of the opinion that she suffered a heart attack while in the Methodist emergency room prior to the stent replacement.

After learning Attorney Ragsdale's view of the medical records, the Woodards allege that, on June 29, 2009, they filed a motion to amend the First Lawsuit to assert a new cause of action.[4] However, before this motion was heard, on July 31, 2009, the Woodards took a voluntary nonsuit of their claims against Methodist, Dr. Simmons, and the Sutherland Cardiology Clinic.

Six months later, on January 26, 2010, the Woodards filed a new complaint in the Circuit Court of Shelby County, Tennessee, alleging negligence in the emergency room and in the cath lab by Dr. Gross and Dr. Basco (hereinafter "Second Lawsuit"). The Second Lawsuit also asserted that Drs. Gross and Basco fraudulently concealed from Mrs. Woodard the facts regarding her medical condition and the cause of her heart attack. The complaint in the Second Lawsuit was later amended to include claims of vicarious liability against Methodist, this time for the actions of Drs. Gross and Basco.

A month after the Second Lawsuit was filed, Drs. Gross and Basco filed a motion for summary judgment, seeking dismissal of the Second Lawsuit. The motion asserted, *inter*

---

[4] The record does not contain a motion to amend the First Lawsuit.

*alia*, that the action was barred by both the one-year statute of limitations and the three-year statute of repose, set forth in Tennessee Code Annotated § 29-26-116. After Methodist was added to the Second Lawsuit, it filed a motion to dismiss, adopting the position taken by Drs. Gross and Basco in their summary judgment motion. Methodist argued that it could not be held vicariously liable for the acts of Drs. Gross and Basco because the Woodards' claim against the physicians was extinguished as a matter of law.

In response to the Defendants' motions, the Woodards argued that the three-year statute of repose was tolled because Dr. Gross and Dr. Basco fraudulently concealed their negligence from Mrs. Woodard, an exception which would toll the three-year statute of repose. The Woodards contended that there were genuine issues as to the facts regarding fraudulent concealment. After reviewing the motions, the trial court gave the parties ninety days to conduct discovery before taking up the motions again. Discovery ensued.

The discovery included the deposition of Mrs. Woodard. Mrs. Woodard said that she recalled having her daughter drive her to the emergency room because she was having chest pains, but she recalled little else about her visit to the Methodist emergency room in November 2006. She had a clearer recollection of her interactions with her treating cardiologist, Dr. Smith, at Baptist Hospital in February 2007. Mrs. Woodard testified that Dr. Smith and some of the nurses at Baptist Hospital asked her if she was aware that she had previously had a myocardial infarction. When Mrs. Woodard indicated that she thought she had, Dr. Smith requested her medical records. However, because Dr. Smith could not get Mrs. Woodard's medical records immediately, Dr. Smith did a heart catheterization procedure to try to determine what had happened to Mrs Woodard's heart prior her admission to Baptist. Mrs. Woodard testified that Dr. Smith said that she "saw evidence" that the problems with Mrs. Woodard's heart were a result of the November 2006 stent replacement. Mrs. Woodard indicated that Dr. Smith's assessment was based on the testing Dr. Smith conducted rather than on Mrs. Woodard's medical records, because Dr. Smith did not have the medical records when she told Mrs. Woodard about the prior heart attack. Mrs. Woodard said that she received her medical records on March 16, 2007.[5] That same month, Mrs. Woodard gave the records to her attorneys, for them to review.

---

[5] Dr. Smith's opinion, that Mrs. Woodard's myocardial infarction occurred during her November 2006 the stent replacement, appears in Dr. Smith's discharge summary dictated on February 13, 2007. The discharge summary was printed on March 22, 2007, after Mrs. Woodard received her medical records. There is no indication that Dr. Smith saw Mrs. Woodard's medical records before the discharge summary was printed.

After discovery was conducted, the trial court held a hearing on the pending motions. At the hearing, Attorney Ragsdale was asked to explain his allegation of fraudulent concealment. He responded:

> Dr. Gross knew and Dr. Basco knew before Mrs. Woodard got to the cardiac cath lab that she had had a myocardial infarction in the emergency room. Neither doctor told her at any time and it doesn't appear in the record that they told her at any time that you had an infarction in the emergency room. They didn't say anything to her.
>
> She then was led to believe that the infarction only occurred because they put a stent in wrong, when, in fact, . . . she had an infarction in the emergency room before she got to the cath lab.

In response to the trial court's questions, Attorney Ragsdale then clarified to the trial court that Mrs. Woodard was not told that the infarction occurred during the stent replacement surgery by any physician who had been named as a defendant in the lawsuit. Rather, Mrs. Woodard was told this by her treating physician, Dr. Stacy Smith. He contended that Mrs. Woodard's previous attorneys relied on Dr. Smith's statement as to the myocardial infarction.

At the conclusion of the hearing, the trial court issued an oral ruling, granting summary judgment in favor of all of the Defendants. The trial court observed that Mrs. Woodard's theory, that the statute of repose was tolled until Mrs. Woodard discovered via Attorney Ragsdale that Drs. Gross and Basco were negligent, "requires some diligence in not being able to find or discover a cause of action against these doctors." The trial court observed: "The records were available. Whatever Drs. Gross and Basco did or did not do was contained in the records. That wasn't discovered." It found no due diligence by Mrs. Woodard in discovering her potential claims against Drs. Gross and Basco, and no duty by the defendant physicians to tell Mrs. Woodard more than what was in her medical records, thus no evidence of fraudulent concealment.

On September 22, 2011, the trial court entered a written order to the same effect, granting summary judgment in favor of Drs. Gross and Basco, as well as Methodist. The order held that the applicable statute of repose barred any action against Drs. Gross and Basco. In the written order, the trial court noted that when the First Lawsuit was filed, "[t]he medical records were available to Plaintiff at that time." It found that there was "no due diligence to discover causation," as to the theory of recovery against Drs. Gross and Basco advocated by Attorney Ragsdale. The order states: "The Plaintiffs knew in 2007 that Mrs. Woodard had suffered a heart attack in 2006. Filing a lawsuit against Drs. Gross and Basco in 2010 is too late." The trial court's order concluded that Drs. Gross and Basco had no duty to tell Mrs.

Woodard anything further about what happened to her in 2006 "as this information was contained in her medical records." It found "no evidence of fraudulent concealment in this matter." On this basis, the trial court granted summary judgment in favor of all Defendants. The Woodards now appeal.

### ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, the Woodards raise three issues. First, they argue that the trial court erred in failing to adhere to the mandated standard of review for a motion for summary judgment. Second, they argue that the trial court erred in determining that there were no disputed issues of fact for the jury as to whether reasonable diligence was exercised by Mrs. Woodard in determining the true cause of her injuries. Finally, the Woodards contend that the trial court erred in not tolling the statute of repose and in finding no disputed issues of fact for the jury as to whether the Defendants engaged in fraudulent concealment.

A trial court's decision to grant a motion for summary judgment presents a question of law and is reviewed *de novo*, enjoying no presumption of correctness on appeal. ***BellSouth Adver. & Publ'g Co. v. Johnson***, 100 S.W.3d 202, 205 (Tenn. 2003). "This court must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied." ***Mathews Partners, LLC v. Lemme,*** No. M2008-01036-COA-R3-CV, 2009 WL 3172134, at \*3; 2009 Tenn. App. LEXIS 667, at \*10 (Tenn. Ct. App. Oct. 2, 2009) (citing ***Hunter v. Brown***, 955 S.W.2d 49, 50-51 (Tenn. 1977)).

In discussing the applicable standard of review, Mrs. Woodard states in her appellate brief: "This case was filed before the change in law for summary judgment, and the law under ***Byrd v. Hall***, 847 S.W.2d 208 (Tenn. 1993), is the proper standard to be used in this case." We must respectfully disagree. This Court recently articulated the standard of review where the party seeking summary judgment is a defendant relying on an affirmative defense:

> A motion for summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. "The party seeking the summary judgment has the burden of demonstrating that no genuine disputes of material fact exist and that it is entitled to a judgment as a matter of law." ***Green v. Green***, 293 S.W.3d 493, 513 (Tenn. 2009) (citing ***Martin v. Norfolk S. Ry.***, 271 S.W.3d 76, 83 (Tenn. 2008); ***Amos v. Metro. Gov't of Nashville & Davidson County***, 259 S.W.3d 705, 710 (Tenn. 2008)). "When ascertaining whether a genuine dispute of

material fact exists in a particular case, the courts must focus on (1) whether the evidence establishing the facts is admissible, (2) whether a factual dispute actually exists, and, if a factual dispute exists, (3) whether the factual dispute is material to the grounds of the summary judgment." *Id.* Not every factual dispute requires the denial of a motion for summary judgment. *Id.* at 514. To warrant denial of a motion for summary judgment, the factual dispute must be material, meaning "germane to the claim or defense on which the summary judgment is predicated." *Id.* (citing *Eskin v. Bartee*, 262 S.W.3d 727, 732 (Tenn. 2008); *Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn. 1999)).

When the party moving for summary judgment is a defendant asserting an affirmative defense, he or she may shift the burden of production by alleging undisputed facts that show the existence of the affirmative defense. *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 9 n.6 (Tenn. 2008). "If the moving party makes a properly supported motion, then the nonmoving party is required to produce evidence of specific facts establishing that genuine issues of material fact exist." *Martin*, 271 S.W.3d at 84 (citing *McCarley v. W. Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998); *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)). The nonmoving party may satisfy its burden of production by: (1) pointing to evidence establishing material factual disputes that were overlooked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P., Rule 56.06. *Id.* (citing *McCarley*, 960 S.W.2d at 588; *Byrd,* 847 S.W.2d at 215 n. 6).

The resolution of a motion for summary judgment is a matter of law, which we review de novo with no presumption of correctness. *Martin*, 271 S.W.3d at 84. However, "we are required to review the evidence in the light most favorable to the nonmoving party and to draw all reasonable inferences favoring the nonmoving party." *Id.* (citing *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 89 (Tenn. 2000)). Summary judgment is appropriate "when the undisputed facts, as well as the inferences reasonably drawn from the undisputed facts, support only one conclusion--that the moving party is entitled to a judgment as a matter of law." *Green*, 293 S.W.3d at 513 (citing *Griffis v. Davidson County Metro. Gov't*, 164 S.W.3d 267, 283-84 (Tenn. 2005); *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 620 (Tenn. 2002)).

***Bell v. Eller Media Co.***, No. W2010-01241-COA-R3-CV, 2011 WL 255115, at *2-3; 2011 Tenn. App. LEXIS 18, at *6-9 (Tenn. Ct. App. Jan. 20, 2011), *perm. app. den.*, No. W2010-01241-SC-R11-CV, 2011 Tenn. LEXIS 469, at *1 (Tenn. May 25, 2011). We note that, even if the moving party shifts the burden of production by showing that undisputed facts show the existence of an affirmative defense, "the burden remains on the moving party to prove the affirmative of its defense." ***McMahon v. Sevier County***, No. E2005-02028-COA-R3-CV, 2007 WL 1946650, at *3 (Tenn. Ct. App. July 3, 2007).

## ANALYSIS

The Woodards first argue that the trial court failed to handle the motions for summary judgment in this case properly, and specifically failed to acknowledge its duty to view the evidence in a light most favorable to the Woodards. Instead, the Woodards contend, the trial judge acted more as a "thirteenth juror" than a judge faced with a summary judgment motion. The Woodards point to several statements made by the trial court which they contend demonstrate that the trial court improperly weighed evidence.

However, as noted above, we review the grant of summary judgment *de novo,* giving no presumption of correctness to the trial court's assessment; instead, we will make a fresh determination as to whether the requirements of Tenn. R. Civ. P. 56 have been met. ***See Mathews Partners,*** 2009 WL 3172134, at *3; 2009 Tenn. App. LEXIS 667, at *10 (citing ***Hunter***, 955 S.W.2d at 50-51).

The Woodards contend next that the trial court erred in finding no disputed issue of material fact on whether the defendant physicians engaged in fraudulent concealment, thereby tolling the statute of repose. The Woodards argue at length about the application of the discovery rule, explaining that Mrs. Woodard "did not discover her cause of action until May 14, 2009 . . . . Mrs. Woodard was unable to pinpoint the necessary parties until this time because the Defendants knew, and failed to disclose, that her heart attack actually occurred under their negligent treatment." Drs. Gross and Basco had a confidential or fiduciary relationship with Mrs. Woodard, the Plaintiffs contend, and thus had a duty to disclose to her that her heart attack occurred while under their treatment and as a result of their negligence. The Woodards maintain that Mrs. Woodard acted reasonably in relying on the statement in Dr. Smith's discharge summary that indicated that Mrs. Woodard's myocardial infarction occurred during the stent replacement surgery. At the very least, the Woodards assert, there is a factual issue as to Mrs. Woodard's due diligence.

Statutes of repose serve a purpose similar to that of statutes of limitation, in that both seek to prevent the "adjudication of stale claims." ***See Doyle v. Frost,*** 49 S.W.3d 853, 859 (Tenn.

2001) (quoting ***Gamble v. Hosp. Corp. of Am.***, 676 S.W.2d 340, 343 (Tenn. Ct. App. 1984). Our Supreme Court has explained the difference between a statute of limitations and a statute of repose:

> A statute of limitations normally governs the time within which legal proceedings must be commenced after a cause of action accrues. A statute of repose, on the other hand, limits the time within which an action may be brought and is unrelated to the accrual of any cause of action.

***Calaway ex rel. Calaway v. Schucker***, 193 S.W.3d 509, 515 (Tenn. 2005) (citing ***Jones v. Methodist Healthcare***, 83 S.W.3d 739, 743 (Tenn. Ct. App. 2001)). Thus, a statute of repose "impose[s] an absolute time limit within which action must be brought" and serves "as an outer limit or ceiling superimposed upon the existing statute of limitations." ***In re Estate of Davis***, 308 S.W.3d 832, 838 (Tenn. 2010); ***Cronin v. Howe***, 906 S.W.2d 910, 913 (Tenn. 1995).

In the context of medical malpractice, the statute of repose "was intended by the Legislature to provide certainty as to the time period during which a physician could be subject to potential liability." ***Cronin***, 906 S.W.2d at 913. Unlike the statute of limitations applicable in a medical malpractice action, the time limit in the statute of repose is "unrelated to the accrual of the cause of action, commencing not on discovery like the statute of limitations, but on the date of the alleged wrongful act." ***Shadrick v. Coker***, 963 S.W.2d 726, 735 (Tenn. 1998) (citing ***Braden v. Yoder***, 592 S.W.2d 896, 897 (Tenn. App. 1979)).

Tennessee Code Annotated § 29-26-116 first sets forth the one-year statute of limitations applicable in medical malpractice actions. Tenn. Code Ann. § 29-26-116(a)(1)(2011). The statute provides specifically that if the plaintiff does not discover the alleged injury within the one-year limitations period, then "the period of limitation shall be one (1) year from the date of such discovery." Tenn. Code Ann. § 29-26-116(a)(2). The statute then sets forth the three-year statute of repose applicable in such medical malpractice actions:

> In no event shall any such action be brought more than three (3) years after the date on which the negligent act or omission occurred except where there is fraudulent concealment on the part of the defendant, in which case the action shall be commenced within one (1) year after discovery that the cause of action exists.

Tenn. Code Ann. § 29-26-116(a)(3). Thus, in making the initial determination of whether the three-year period in the statute of repose has lapsed, the discovery rule and the date on which the plaintiff "discovered" her alleged injury are irrelevant. The three-year period

begins to run on the date the alleged negligent act occurred, regardless of when the plaintiff discovered the injury. The only exception, stated in the subsection of the statute, is where the plaintiff can show fraudulent concealment by the defendant. If the plaintiff can show such fraudulent concealment, then the plaintiff is permitted to commence her action within one year after "discovery that the cause of the action exists."[6] *Id.*

As noted above, a defendant who relies on an affirmative defense, such as the statute of repose, in a summary judgment motion, must point to undisputed facts that establish the defense. In this case, it is undisputed that negligent acts on which the Woodards' claims are based occurred on November 24, 2006. It is also undisputed that the Woodards' complaint in this Second Lawsuit was filed on January 26, 2010, three years and two months after the date on which the alleged negligent acts occurred. Therefore, the Defendants have established, based on undisputed facts, that the complaint at issue was filed after the expiration of the three-year time period set forth in Section 29-26-116(a)(3).

As noted above, if a defendant makes a properly supported motion for summary judgment based on an affirmative defense, "then the nonmoving party is required to produce evidence of specific facts establishing that genuine issues of material fact exist." *Bell*, 2011 WL 255115, at *2 (quoting *Martin*, 271 S.W.3d at 84). However, "the burden remains on the moving party to prove the affirmative of its defense." *McMahan v. Sevier County*, No. E2005-02028-COA-R3-CV, 2007 WL 1946650, at *3 (Tenn. Ct. App. July 3, 2007). In this case, the Woodards seek to avoid the operation of the statute of repose by asserting the exception for "fraudulent concealment on the part of the defendant" stated in Section 29-26-116(a)(3). To do so, our Supreme Court has explained what plaintiffs such as the Woodards must show:

> A plaintiff in a [medical malpractice case] attempting to toll the statute of repose contained in T.C.A[.] 29-26-116(a)(3) by relying upon the fraudulent concealment exception to the statute must establish that (1) the health care provider took affirmative action to conceal the wrongdoing or remained silent and failed to disclose material facts despite a duty to do so, (2) the plaintiff could not have discovered the wrong despite exercising reasonable care and diligence, (3) the health care provider knew of the facts giving rise to the cause of action and, (4) a concealment, which may consist of the defendant withholding material information, making use of some device to mislead the plaintiff, or simply remaining silent and failing to disclose material facts when there was a duty to speak.

---

[6]Discovery "that the cause of action exists" is not necessarily the same as discovery of "the alleged injury." Tenn. Code Ann. § 29-26-116(a)(2).

***Shadrick v. Coker***, 963 S.W.2d 726, 736 (Tenn. 1998). ***See also Doe v. Catholic Bishop for Diocese of Memphis***, 306 S.W.3d 712, 719-20 (Tenn. Ct. App. 2008).

On appeal, the Woodards concede that the Defendants, Drs. Gross and Basco,[7] did not take affirmative actions to conceal anything. Instead, the Woodards assert that Drs. Gross and Basco had a fiduciary relationship with their patient, Mrs. Woodard, and failed to tell her that she had a myocardial infarction in the emergency room prior to the stent replacement procedure. Thus, the "material information" or "material fact" that Woodards say that Drs. Gross and Basco should have disclosed was the fact that Mrs. Woodard's myocardial infarction allegedly occurred while she was in the Methodist emergency room, not later during the stent replacement procedure.

Viewing the record before us in a light most favorable to the Woodards, we must conclude that no information or material facts were withheld from Mrs. Woodard. When the First Lawsuit was filed in 2007, Mrs. Woodard's attorneys were aware that she went to Methodist emergency room because she was having chest pains, shortness of breath, sweating, and radiating pain in her left arm. They knew that Mrs. Woodard smoked cigarettes, had a history of heart disease, and was under stress. They had all of her medical records before them, and even quoted extensively from the records in the original circuit court complaint. Based on all of this information, they asserted claims of negligence against Dr. Simmons.

As noted by the trial court, all of the same information was before Attorney Ragsdale when the Second Lawsuit was filed. Reviewing all of the same information, Attorney Ragsdale was of the opinion that claims for negligence should be asserted against Drs. Gross and Basco, rather than Dr. Simmons. Like the Woodards' first attorneys, he obtained an expert witness who shared his opinion. In the hearing on the summary judgment motion, after Attorney Ragsdale related to the trial court the theory of negligence by Drs. Gross and Basco asserted in the Second Lawsuit, the following exchange occurred:

> THE COURT: Now, that information was gleaned from the records now?
> MR. RAGSDALE: Let me pass the– yes.
>        * * *
> THE COURT: And all of that information was in the records, though, is that correct, whenever it occurred; is that right? In other words, there were no new records produced later that showed that.
> MR. RAGSDALE: That's right.
> THE COURT: So if it existed, this information, it was there back in 2007 –

---

[7]The Woodards do not allege fraudulent concealment by Defendant Methodist. Only vicarious liability is alleged against Methodist.

-12-

MR. RAGSDALE: (Interposing.) That's right.

The Woodards concede, then, that Attorney Ragsdale looked at all of the same facts and information that were available to Mrs. Woodard in 2007, but simply reached a different conclusion, namely, that Drs. Gross and Basco were negligent, rather than Dr. Simmons. Thus, the information available in 2007 was sufficient, and no material information was withheld.

We confess that we are not completely clear as to the standard for summary judgment that is applicable where the defendant relies on an affirmative defense and the plaintiff asserts an exception to the affirmative defense. It is undisputed that the Woodards have a burden of production on the exception, that is, they must produce evidence of fraudulent concealment that would toll the statute of repose. However, our Supreme Court has demonstrated antipathy toward considering a shift in the burden of production at the summary judgment stage, at least in employment discrimination cases, out of concern that it might result in an improper grant of summary judgment. *See Gossett v. Tractor Supply Co., Inc.*, 320 S.W.3d 777, 783-84 (Tenn. 2010). If the plaintiffs are not required to produce some evidence in response to a summary judgment motion, need they only say the phrase "fraudulent concealment" to thrust the burden on the defendants to negate an element of their claim of fraudulent concealment? We do not know.

On this record, it does not matter. We find that the Woodards have not produced evidence that anything material was concealed. We also hold that the Defendants have negated an essential element of the Woodards' claim of fraudulent concealment and have shown, based on undisputed facts, that no material information was withheld from the Woodards. *Hannan*, 270 S.W.3d at 8. Under these circumstances, the Woodards cannot rely on any exception to the three-year statute of repose, and the Defendants are entitled to judgment as a matter of law. This holding pretermits all other issues raised on appeal.

## CONCLUSION

The decision of the trial court is affirmed. Costs on appeal are assessed against Appellants Stephanie and Eddie Woodard and their surety, for which execution may issue if necessary.

_____

HOLLY M. KIRBY, JUDGE

-13-